## Commonwealth ex rel. Meredith, Atty. Gen., v. Johnson, Governor, et al.

Aug. 24, 1942.

As Modified on Denial of Rehearing Dec. 4, 1942.

290

Hubert Meredith, Attorney General, for appellant.

Smith & Leary and J. J. Leary for appellees.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER— Affirming in part and reversing in part.

The case involves the validity of the whole and numerous items of the 1942 General Assembly bill (House Bill No. 1, Chap. 1, Page 1, Acts 1942, General Assembly) and the 1942 Deficiency Appropriation bill (Senate Bill No. 2, Chap. 2, Page 58, Acts 1942, General Assembly). The Attorney General contends that the titles of both bills are violative of Section 51 of the Constitution which reads as follows:

"No law enacted by the general assembly shall relate to more than one subject, and that shall be expressed in the title, and no law shall be revised, amended, or the provisions thereof extended or conferred, by reference to its title only, but so much thereof as is revised, amended, extended or conferred, shall be re-enacted and published at length."

The title of House Bill No. 1 is in the following language:

"An Act appropriating money for the operation, maintenance, support and functioning of the State Government of the Commonwealth of Kentucky, including each of the various officers, departments, boards, commissions, institutions, and subdivisions of the State Government, and the purchase of record books as provided by Section 388, Kentucky Statutes, 1936 Edition, judiciary and court costs, Confederate pensions, the Frankfort Cemetery, Jefferson and Kenton County fees, and for defraying the expenses of all other State obligations for (a) the fiscal years ending June 30, 1943, and June 30, 1944, (b) the fiscal years of the Department of Highways ending March 31, 1943, and March 31, 1944; designating the sources and funds from which said appropriations are made, and providing for the establishment of certain revolving funds specifically mentioned; providing for money refunds; authorizing and empowering the Commissioner of Finance with the approval of the Governor to limit, restrict, and supervise expenditures of all money appropriated herein and hereafter by the General Assembly in the Regular Session of 1942, and to reduce or adjust each of the appropriations in the manner herein provided; pro-

viding for certain appropriations to be limited to specific purposes, and barring the use of appropriations for certain purposes; repealing all blanket and continuing appropriations not provided for in this Act and appropriations made by any previous Act or Acts of the General Assembly of the Commonwealth of Kentucky, and repealing all laws or parts of laws in conflict with any of the provisions of this Act; enacting each section and each sub-section as a separate or specific appropriation.''

The title to Senate Bill No. 2 reads:

''An Act appropriating money from the General Fund of the Commonwealth of Kentucky for the fiscal year ending June 30, 1942, and from the Highway Fund for the fiscal year ending March 31, 1942, supplementing appropriations heretofore made by the General Assembly for the fiscal year 1941-1942.''

It is complained that each of the titles relates to more than one subject and does not detail the uses to which the money appropriated is to be devoted. We are of the opinion that such complaint is without foundation. Neither title attempts to detail every item contained in the bill, but such detail was not contemplated by the members of the Constitutional Convention in adopting Section 51. The purpose in mind in adopting that section was to prevent surprise and fraud upon the Legislature and other interested parties, thus preventing ''log rolling'' legislation. The courts have never held a title to be insufficient because of general terms, so long as it is inclusive of all the subjects dealt with in the act. Allen v. Cromwell, etc., 203 Ky. 836, 263 S. W. 356. Section 51 does not contemplate that the title state the manner in which the object of the act is to be accomplished. South et al. v. Fish et al., 181 Ky. 349, 205 S. W. 329; Estes v. State Highway Commission et al., 235 Ky. 86, 29 S. W. (2d) 583. There is nothing in either of the bills under attack that does not relate to the appropriation of money by the Commonwealth and since the title expressly states that it is a bill which relates to the appropriation of money for the fiscal years ending June 30, 1942, and June 30, 1943, in respect to the general government, and the fiscal years ending March 31, 1943, and March 31, 1944, in respect to the Department of Highways, it is sufficient to apprise those interested of the subject matter of the Act.

Nor are we able to see that Section 2 of the Constitution has been contravened by the Acts under consideration. That section is in the following language:

"Absolute and arbitrary power over the lives, liberty and property of free men exists nowhere in a republic, not even in the largest majority."

That section was enacted as a safeguard to the individual in respect to his life, liberty, and property and has no connection with the appropriation of public funds.

We think that the contention that the Acts violate Section 60 of the Constitution to be equally without merit. That section provides that no law (with specified exceptions) shall be enacted to take effect upon any other authority than the General Assembly. It is claimed that the provisions of the bills under consideration which permit the Governor and certain other executives to determine the existence of an emergency and to expend the monies appropriated for that purpose is a provision which permits the Governor and the other officials to put the Act into effect. But such is not the case. The Acts became effective upon their passage and approval by the Governor, and the determination of the Governor and other officials when an expenditure shall be made merely puts the provisions of the Act into operation. The weakness of the Attorney General's position in this respect is demonstrated by the following language contained in his brief:

"The authorities cited under Section 60 * * * to which reference is made will be quite sufficient to demonstrate the correctness of our position on this point."

We do not agree with that conclusion and since no further argument is made in support of the contention, we are of the opinion that none can be made.

Appellant most earnestly contends that several of the provisions of the Acts do not amount to appropriations within the meaning of Section 230 of the Constitution and that in authorizing the Governor to determine an emergency, the Legislature has delegated to him legislative authority in contravention of Sections 27, 28 and 29 of the Constitution, which read:

"Section 27. The powers of the government of the Commonwealth of Kentucky shall be divided into

three distinct departments, and each of them be confined to a separate body of magistracy, to-wit: Those which are legislative, to one; those which are executive, to another; and those which are judicial, to another.

"Section 28. No person, or collection of persons, being of one of those departments, shall exercise any power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted.

"Section 29. The legislative power shall be vested in a house of representatives and a senate, which, together, shall be styled the 'General Assembly of the Commonwealth of Kentucky.'"

As said in Cooley's Constitutional Limitations, Vol. 1, page 224:

"One of the settled maxims in constitutional law is, that the power conferred upon the legislature to make laws cannot be delegated by that department to any other body or authority."

The reason for this rule is that one may not relieve himself of a duty which has been entrusted to him under the Constitution by delegating the authority to someone else. But, as said in the same work on page 228:

"The maxim that power conferred upon the legislature to make laws cannot be delegated to any other authority does not preclude the legislature from delegating any power not legislative which it may itself rightfully exercise. It may confer an authority in relation to the execution of a law which may involve discretion, but such authority must be exercised under and in pursuance of the law. The legislature must declare the policy of the law and fix the principles which are to control in given cases; but an administrative officer or body may be invested with the power to ascertain the facts and conditions to which the policy and principles apply. If this could not be done there would be infinite confusion in the law, and in an effort to detail and to particularize, they would miss sufficiency both in provision and execution."

The question then resolves itself into whether in the enactment of certain provisions of the appropriation

bills, the Legislature has delegated to the Governor and other officials of the State, legislative authority or purely administrative authority. The provisions objected to are as follows:

(1). "General Emergency Fund. For meeting ordinary recurring and extraordinary expenses deemed emergencies by the Governor of the Commonwealth, and to be expended by the Governor in his discretion for any emergency that he may determine requires the expenditure of any part of said fund .... $250,000.00.

(2). "Special Emergency Fund. For extraordinary expenses which constitutes special emergencies and/or for relief or for indigent persons in the Commonwealth not otherwise provided for by any other agency of the State; said fund to be administered and expended by the Governor either directly or by transfer in the manner prescribed by the Budget and Financial Administration Act and in this section for other expenditures .... $200,000.00.

(3). "National and Civil Defense Emergency Fund. For meeting extraordinary expenses which may be imposed upon the Commonwealth of Kentucky to meet the emergency created by the state of war existing between the United States and other countries. (No part of this sum shall be expended for the expenses of local civil defense boards or commissions, except under regulations prescribed by the State Civil Defense Commission.) .... $500,000.00.

"It being impossible for the Legislature to anticipate the necessity for expending all of the money set aside for each separate emergency fund, it is the intention of the Legislature and it does hereby vest the Governor of the Commonwealth with the power to transfer any of the money provided in the three above emergency funds from one emergency fund to another, and the same may be expended for the recurring and extraordinary expenses provided for in the fund to which said sum may be transferred.

(4). "For the purposes of repair, reconstruction and construction of buildings, and for the purposes of purchasing lands, buildings and appurtenances, and for the purpose of equipping and sup-

plying the penal institutions, the mental hospitals, the feebleminded institute, the school for the deaf, the state schools under the direct supervision of the State Board of Education, and Hazlewood Tuberculosis Hospital, there is hereby appropriated a portion of the unencumbered cash balance in the General Expenditure Fund at the close of the fiscal year ending June 30, 1942. This sum or amount shall equal the difference between the unencumbered cash balance at said date in the Treasury to the credit of the General Expenditure Fund and the amount which, shall be determined necessary as operating capital within this Fund preliminary to meeting the budgetary requirements for the 1942-1943 fiscal year. The Governor, with the advice of the Commissioner of Finance, the Commissioner of Revenue, the Commissioner of Welfare, and the Treasurer, shall determine the necessary amount of operating capital as defined above and shall make direct approval of all expenditures from this appropriation. In no event shall the sum expended for these purposes exceed the total of the unencumbered cash balance in the General Expenditure Fund at the close of business June 30, 1942, nor shall the sum expended exceed Three Million ($3,000,000.00) Dollars.

(5). "Capital Outlay. [University of Kentucky] .... $200,000.00.

(6). "New Lands and Buildings. For extraordinary recurring expenses and capital outlay, and for ordinary recurring expenses in the restoration, repairing, replacement, equipment, maintenance, and improvements of State property [to the Department of Finance], .... $250,000.00.

(7). "Cumberland Gap National Park. Capital Outlay. For the purchase of land in order to cooperate with the National Park Service, and the States of Virginia and Tennessee in the establishment of a Cumberland Gap National Park .... [To the Department of Conservation] $75,000.00.

(8). "Division of Highway Patrol. There is hereby appropriated out of the State Highway Road Fund for the fiscal year ending March 31, 1943, for the ordinary recurring expenses of the operation of the Highway Patrol, as provided by law, the sum of

$1,000,000.00. (It is the intention of the Legislature that $700,000.00 of this appropriation be used and expended only upon approval of the Governor as it may become necessary for the Governor to expand the Highway Patrol services).

(9). "New Lands and Buildings. There is hereby appropriated for extraordinary recurring expenses and capital outlay and for ordinary recurring expenses in the restoration, repair, replacement of equipment, maintenance, and improvements of State property, the sum of [This appropriation made to the Department of Finance] .... $50,000.00.

(10). "New Lands and Buildings. There is hereby appropriated for the ordinary recurring expenses of architectural fees and the preparation of plans and specifications for repair, reconstruction and construction of State properties, to be expended with the approval of the Governor, the sum of [This also to the Department of Finance] .... $20,-000.00.

(11). "There is hereby appropriated from the State Highway Fund for the Division of Highway Patrol for the fiscal year ending March 31, 1942, for ordinary recurring expenses of operation of the Highway Patrol as provided by law, to be expended only with the approval of the Governor, the sum of .... $50,000.00.

(12). "National and Civil Defense Emergency Fund. There is hereby appropriated for meeting special emergencies created by National and Civil Defense, to be administered and expended by the Governor of the Commonwealth, the sum of .... $200,000.00."

While this court has not been called on to pass upon this identical question, many courts in jurisdictions having similar constitutional provisions, in well-reasoned opinions, have decided the question contrary to the contention of the Attorney General. The widest discretion delegated by the bills is the power vested in the Governor to expend, and to transfer money from one fund to another, upon the finding by him that an emergency exists for which public money should be expended. It could scarcely be contended that the Governor's finding in respect to an emergency would not be reviewable by the

courts in the event that the delegated discretion should be abused; and certainly the Legislature would not be required to anticipate every item for which it might become necessary to expend money in the course of the operation of the affairs of the State. It might be that the word "emergency" was erroneously employed in the Act. Perhaps it would have been better to have designated the fund "miscellaneous expense" (anticipated but undefined). It is a matter of common knowledge that even household budgets must contain an anticipation of miscellaneous expenses, most of which are created by unforeseen emergencies. To hold that the state government could not take the precaution of anticipating such miscellaneous items would be to retard the progress and operation of public affairs. The only section of our Constitution dealing with appropriations is Section 230 which provides:

> "No money shall be drawn from the state treasury, except in pursuance of appropriations made by law."

It will be observed that this language does not undertake to prescribe the form to be used in making appropriations nor does it require that appropriations shall be detailed, definite, or specific. While some of our sister states' constitutions contain provisions prescribing the form and extent to which appropriations shall be detailed and specified, a great many states, like our own, have no restrictions in that respect. Wisconsin has a provision in its constitution similar, if not precisely in the same language, as that of our own. The Wisconsin Legislature appropriated certain monies from the general fund and other funds not otherwise appropriated, as an emergency appropriation to meet operating expenses of state departments for which sufficient money had not been appropriated to carry on its work. The Act appropriating the money provided that none of it should be paid out of the emergency fund except on certification of the Governor and other state officials. The court there said:

> "As to the form which appropriations may take, the Constitution lays down no ironclad rules. There is no such requirement that appropriations shall be specific or definite in amount as is found in the Constitution of some of our sister states. In two lines it is declared that no money shall be paid out of the

treasury except in pursuance of an appropriation by law. We do not consider that it is within the province of the court to annex restrictions or limitations to this plain language, or to prescribe the form of appropriation bills. The means by which legitimate expenditures are to be made necessarily rest largely in legislative discretion, a discretion which the courts have little power or little inclination to control so long as there is no violation of constitutional requirements."

State ex rel. v. Zimmerman, 183 Wis. 132, 197 N. W. 823, 826. The Arizona court in discussing the subject has said:

"Whether an emergency or contingency exists authorizing the Governor to incur debts against the emergency fund * * * is a question of fact, the ascertainment of which naturally devolves upon the Governor. The exercise of his discretion upon the facts should not be disturbed by the courts unless for a lack of power or an abuse of discretion." Prideaux v. Frohmiller, 47 Ariz. 347, 56 P (2d) 628, 631.

California has similarly dealt with the question in the following language:

"The setting aside of the emergency fund constitutes an appropriation. * * * When so appropriated it becomes part of the funds set aside for the proper functioning of the state government and its several departments, offices and purposes.

" * * * We therefore conclude that the department of finance, through its executive officer, has the power to determine, in the exercise of a sound discretion, whether an emergency exists * * * and to order the transfer of money from the emergency fund for a necessary and proper state purpose when no specific appropriation has been made therefor, or when a specific appropriation has been made to a state department, office or purpose, and the same has been found to be insufficient."

Raymond v. Christian, 24 Cal. App. (2d) 92, 74 P. (2d) 536, 546.

To the same general effect have been decisions of the courts of Pennsylvania, New York, West Virginia, Washington, Massachusetts, and Vermont. Moers v.

300

Reading, 21 Pa. 188, 202; People v. Tremaine, 252 N. Y. 27, 168 N. E. 817; Le Page v. Bailey, W. Va., 170 S. E. 457; State v. Ernst, 195 Wash. 214, 78 P. (2d) 526; In re Opinion of Justices, 302 Mass. 605, 19 N. E. (2d) 807 and State Highway Board v. Gates, 110 Vt. 67, 1 A. (2d) 825. The cases cited by appellant in support of his contention were construing constitutions or other instruments in each of which there was a prohibition contained in the instrument itself against the delegation of such powers as the Legislature of Kentucky has delegated in this instance.

This court has heretofore recognized the right of the legislative branch of the government to delegate to executive officers the power to determine some fact upon which the act of the Legislature made or intended to make its own action to depend, Ashland Transfer Co. v. State Tax Commission, 247 Ky. 144, 56 S. W. (2d) 691, 87 A. L. R. 534, and that is all the Legislature has done in the Acts under consideration. It has conferred upon the Governor, and in some instances other officers, the power to determine from a state of facts, whether an emergency exists for which public funds· may be expended, and upon such determination make the expenditures from a fund appropriated for the purpose.

The feasibility of an emergency or miscellaneous appropriation is more apparent now than at any other time throughout the existence of the Commonwealth. While the citizens of this State may now feel secure from the threat of bombardment at the hands of nations with which we are at war, it is not unreasonable to suppose that in the very near future it will be necessary to guard every bridge or other part of our highways against such invasion. Should that occur, the Commonwealth should not be hampered because of the lack of a specific appropriation to defray the expense of such protection, and the time required to secure special authority from the Legislature might be fatal to the safety of property it may have become necessary to protect. Foreseeing such possible emergencies, but, being unable to determine at the time of its regular session what specific situation might arise, the Legislature wisely delegated to the Governor the right in his administrative capacity to determine the fact that such an emergency has arisen. This authority is strictly administrative and does not violate Sections 27, 28, 29 or 230 of the Constitution.

The lower court was of the opinion that the appropriation for capital outlay of the University of Kentucky was not sufficiently specific to be valid. The affairs of the University of Kentucky are conducted by a board of trustees in whom the Legislature has vested the duty and authority to operate the University and its properties. Section 4527-18, Carroll's Kentucky Statutes, 1936 Edition. This authority necessarily carries with it the authority, in the exercise of a reasonable discretion, to determine the needs and requirements of the University and to make the necessary expenditures. Craig v. O'Rear, 199 Ky. 553, 251 S. W. 828, 829. The appropriation of capital outlay is to be considered in the light of the authority given to the board by the above cited section of the Statutes; and what we have said concerning the authority of the Governor, in respect to the emergency and miscellaneous items of expense of government, applies equally to the authority delegated to the board of trustees in respect to capital expenditures of the University.

Wherefore, the judgment of the lower court holding invalid the appropriation to capital outlay for the University of Kentucky is reversed for proceedings consistent with this opinion. The remainder of the judgment is affirmed.

Whole court sitting.

On Petition for Rehearing.

VAN SANT, COMMISSIONER.

In his petition for rehearing the Attorney General has assailed the opinion upon the ground that it erroneously declares that he attacked the validity of the entirety of both acts. We arrived at that conclusion by reason of the following language in his original brief:

"* * * the acts are primarily general appropriation acts and the appropriation of money for specific purposes and the mention of other matters necessarily incidental thereto constituted the limit of the matters that might be properly provided in the acts and the several attempts to legislate on various other matters rendered the acts void."

That he has not abandoned his attack upon the validity of the entirety of both acts is shown by the following arguments in the petition for rehearing. "Because the Legislature did not do what it is said in the last quota-

tion above, is the reason we challenge the validity of the act." "The principle laid down in the quotation in the opinion from Mr. Cooley flatly contradicts the conclusions reached in the opinion and upholds our contention, and is quite sufficient to clearly establish the invalidity of the act assailed in these proceedings." Because it is so clear from this language that the validity of the entirety of the acts is attacked, the petition for modification in that respect must be overruled.

Further complaint is made in the petition that the appropriation for "relief or for relief for indigent persons not otherwise provided for" is invalid because authority had not theretofore been given the executive branch of the Government to expend money for relief; and, it is charged that if this appropriation is upheld, the Governor, without discrimination or without any basis upon which to determine a person to be entitled to relief, may expend the appropriation as he sees fit. But we do not so construe the language employed. It is our opinion that no part of this appropriation may be expended in such manner, but may be expended only in pursuance of legislative authority. The existence of such authority is not material to a decision of the case. While the language is somewhat unskillfully employed, we think it was the manifest intention of the Legislature that the words "not otherwise provided for" refer to authorized relief for indigent persons for which funds have not been appropriated elsewhere in the budget acts.

The other questions raised by the petition have been fully answered in the original opinion.

Wherefore, the petition for rehearing is overruled.

Judges Fulton, Tilford, and Ratliff, concur in part and dissent in part.

Judge Fulton dissenting in part.

I am in accord with the majority opinion except in so far as it impliedly approves the provision giving the Governor unlimited power to transfer money in the three emergency funds from one fund to another.

I recognize the necessity for an emergency fund since the Legislature cannot foresee in advance every minute detail of operation of the state government and the consequent necessity of an appropriation therefor. Past experience has disclosed the advisability of such a

fund and the authorities cited in the opinion demonstrate that an appropriation of this character is in accord with settled practice in other jurisdictions.

But, while recognizing the advisability of such funds, it is my opinion that they should be scrutinized with great care. Certainly the Legislature has no power to authorize the Governor to expend a major portion of the state's revenues under the guise of an emergency fund.

It is my opinion, however, that the amount of the three emergency funds created are within legitimate bounds. I would have serious doubt as to the special emergency relief fund except for the construction placed on it in the majority opinion, limiting expenditures therefrom to authorized relief for which funds have not been appropriated elsewhere in the budget.

It is my opinion, however, that the clause granting the Governor power to transfer the money in the three funds from one fund to another is invalid. The practice of establishing emergency funds, unless restricted within narrow limits, will gradually tend towards constituting the Governor, rather than the Legislature, the real agency for the appropriation of the state's revenues. I think a legislative determination must be made as to the amount of an emergency fund and that when so made it must be adhered to. When this is done such a fund is an appropriation within the meaning of Section 230 of the Constitution prohibiting the withdrawal of any money from the state treasury except in pursuance of appropriations made by law but it seems to me that the transferability provision contained in the appropriation bill removes such a fund from the category of an appropriation.

Under this provision, if no expenditures were made from the two special emergency funds, the Governor would have at his disposal approximately $1,000,000 as a general emergency fund to be expended for any emergency he may determine requires its expenditure. Without expression of opinion as to whether a general emergency fund of this amount could be established, I am of the opinion that the transferability provision applicable to the emergency funds is invalid.

I am authorized to state that Judges Tilford and Ratliff concur in this opinion.