# Preston et al. v. Clements, Governor, et al.

July 28, 1950.

W. B. Ardery, Judge

480

Jesse K. Lewis and Marion Rider, for appellants.

A. E. Funk, Attorney General, and M. B. Holifield, Assistant Attorney General, for appellees.

JUDGE LATIMER—Affirming.

Pursuant to and under authority of legislative enactment, the State Property and Buildings Commission proposed and set up plans for the issuance and sale of $4,000,000 in bonds to erect what is known as the Capitol Annex now under construction adjacent to the New State Capitol.

Appellant, Leonard W. Preston, suing as a taxpayer and for and on behalf of all other taxpayers of Kentucky, filed petition and amended petition against Earle C. Clements, Governor of Kentucky, Lawrence W. Wetherby, Lieutenant-Governor, A. E. Funk, Attorney General of Kentucky, Dr. John W. Manning, Commissioner of

Finance, and H. Clyde Reeves, Commissioner of Revenue, constituting and composing the State Property and Buildings Commission, challenging the constitutionality of both the proposed plan for the issuance and sale of bonds and the legislative enactment under which the Commission proposed to act, known as Chapter 56 as it appears in 1950 Supplement to the Kentucky Revised Statutes.

Appellees filed general demurrer to petition, and without waiving same filed answer. By order of the Court the answer was made a cross-petition against the cross-defendants, Bear, Stearns & Company, and their associates forming a syndicate, who were the purchasers of the bonds sold by the Commission. These cross-defendants filed answer. By these pleadings these parties sought to have their respective rights declared and established. Appellees then filed general demurrer to answer of cross-defendants, and without waiving same, filed a reply and introduced evidence before the lower Court upon issues raised by the cross-petition, answer of cross-defendants, and reply thereto. Plaintiff then filed amended petition to conform to facts. General demurrer to appellant's petition as amended was sustained. Appellant declined to plead further, whereupon the Court dismissed the original petition as amended, and then made a declaration of rights as between appellees and cross-defendants, to all of which the original petitioner and cross-defendants objected and excepted, prayed for and were granted an appeal to the Court of Appeals.

We address ourselves first to the attack upon the constitutionality of the law under which the Commission is acting. It is insisted that the Act vests arbitrary discretion in this administrative office; that it fails to prescribe uniform rules of conduct and procedure; and that it delegates legislative authority to an administrative body, thereby violating Sections 27 and 29 of our Constitution. We are again confronted with the question of public administrative law. Though not traditionally recognized as a part of the law, this phase of the law has so planted itself in the field of jurisprudence, that it no longer is looked upon as a nonestablished and revolutionary concept.

Appellees question the right of appellant Preston to

attack the constitutionality of the Act on the ground that there is no infringement on his rights. True, such an attack is open only to persons whose rights are affected by the Act, unless what is being undertaken under the Act is illegal per se. See 11 Am.Jur. 748, Court Law; Tri-City Ferry Company v. Birney, 235 Ky. 540, 31 S.W.2d 932; Lewis v. Furste, 261 Ky. 763, 88 S.W.2d 939; Stein v. Kentucky State Tax Commission, 266 Ky. 469, 99 S.W.2d 443. However, we deem it unnecessary and do not here undertake to express an opinion concerning Preston's right of attack, since the same questions presented by him have been raised by appellant cross-defendants, who unquestionably have an interest.

The prevailing rule seems to be that the courts will avoid the question of constitutionality unless necessary to a proper determination of the merits of the cause under consideration. The proposed plan for sale of revenue bonds and the manner of procuring funds to liquidate them gave rise to and are really the subject of this action.

It certainly cannot be persuasively argued that, in respect thereto, the Commission is acting arbitrarily or that there are no rules of action to govern it. The Act is comprehensive and complete regarding the power and authority of the Commission to issue and sell revenue bonds, and the Commission is definitely circumscribed in the manner and method of its procedure with respect thereto. But it is insisted that the courts will look not necessarily to what is being done, but to what, under the Act, may validly be done.

It is argued that the Commission is given absolute and arbitrary power over the property now owned by the State and a like and equal power both to acquire property and to control the use thereof; that it is given like authority to spend as it pleases $15,000,000 of revenue of the Commonwealth; and that it is given arbitrary power to determine the comparative needs of the various State agencies, all without any uniform rule of action to govern it, or any standard whereby the exercise of its discretion may be measured. · Appellant cites as examples of this naked and arbitrary power portions of the Act, chief among which are the provision:

"To purchase, lease or rent such real estate as the Commission may find to be necessary for the use by

the State or by any State agency, upon such terms and conditions and for such consideration as may appear to the Commission to be fair and reasonable." KRS Supp. 1950, 56.460(3).

"To sell and convey any real estate owned by the State or by any State agency, found by the Commission not to be needed for public use or to have become unsuitable for such use except * * *." KRS Supp. 1950, 56.460(4).

We direct attention to the words in the cited portions "find to be necessary," "fair and reasonable," "found by the Commission." The use of the above in the language of the Act is purposeful and significant. The general rule is that the Legislature may delegate to and confer upon administrative bodies power to find facts and conditions. A careful reading of the Act shows there to be no delegation of regulatory power. There is no offered opportunity for the seizure of power by the Commission. The Commission, under the Act, does not promulgate rules and regulations. There is no implementation of the Statutes by any delegated authority to formulate rules for the future action of the Commission. No authority is given to impose restrictive rules outside the provisions of the Act. There are no quasi legislative or quasi judicial powers or duties conferred. Actually, there are involved only ministerial responsibilities, first, to ascertain the building and housing needs of the State, and then make application of the legislative mandate. The presumption is that administrative bodies will always act within the limits of their authority. An act is not unconstitutional merely because there may be an anticipated unfaithful and invalid administration of it. Any arbitrarily attempted unfaithful or invalid administration of the law would never be free from the restraining hand of the courts. Administrative activities have heretofore been attacked upon substantially the same ground as here wherein this Court has denied the contention of the challengers. Johnson, Governor, v. Commonwealth ex rel. Meredith, Attorney General, 291 Ky. 829, 165 S.W.2d 820; Bloxton v. State Highway Commission, 225 Ky. 324, 8 S.W.2d 392; Estes v. State Highway Commission, 235 Ky. 86, 29 S.W.2d 583.

It has been said that a statute is complete when nothing with respect to a determination as to what the

law is, is left to the agency and, further, the provisions are sufficiently clear, definite and certain so as to enable the agency to know its rights and obligations. People ex rel. Rice v. Wilson Oil Co., 364 Ill. 406, 4 N.E.2d 847, 107 A.L.R. 1500. We think the Act meets the tests of completeness; that it provides an adequate standard by which the Commission is to govern its actions in determining the necessity for the construction of buildings for the use and occupancy of the Commonwealth, its departments and agencies, and for the issuance of revenue bonds to construct same; and that the Act on its face is not invalid although possibly far-reaching.

Cross-defendants raise an additional question as to the constitutionality of the Act. It is argued that the Act creating the State Property and Buildings Commission is violative of Section 51 of the Kentucky Constitution, which requires subject of the Act to be expressed in its title and must not relate to more than one subject. The title to the Act reads: "AN ACT relating to property and buildings in Kentucky; creating a State Property and Buildings Commission and defining its powers, duties, and functions; making provisions concerning appropriations; ratifying action of the former Kentucky Buildings Commission; repealing Chapter 237 of the Acts of 1948 and repealing all laws in conflict." Acts 1949, Ex. Sess., c. 11. The title need not be a table of contents and is sufficient if it is explicit and clear so as to inform members of the Legislature and the public of the subject and its related matters. An Act may have a single general subject expressed in the title and may contain many provisions providing they are not inconsistent with or foreign to the subject. It will be noted that there is no such inconsistency here. We find no merit in this contention.

We next concern ourselves with the attack upon the constitutionality of the plan. It is insisted that the proposed plan of raising $4,000,000 to complete the Capitol Annex is violative of Sections 49 and 50 of the Constitution. The Sections above read, respectively:

"The General Assembly may contract debts to meet casual deficits or failures in the revenue; but such debts, direct or contingent, singly or in the aggregate, shall not at any time exceed five hundred thousand dollars * * * *."

"No act of the General Assembly shall authorize any debt to be contracted on behalf of the Commonwealth except for the purpose mentioned in section 49, unless provision is made therein to levy and collect an annual tax sufficient to pay the interest stipulated, and to discharge the debt within thirty years; nor shall such act take effect until it shall have been submitted to the people at a general election, and shall have received a majority of all the votes cast for and against it * * *."

The question here is whether the issuance of revenue bonds payable only from income derived from rentals of the building, the income being pledged for that purpose, constitutes a debt of the State within the meaning of the above sections. Appellants' answer is, yes. They say that the proposed plan is only a device to circumvent constitutional mandates by creating an agency to do what the Constitution prohibits the Legislature from doing. Appellees' answer is, no. They say that by no means can the proposed bonds be considered or held a general obligation of the State. Let us look at the pertinent part of the Act: "The payment of the bonds, together with the interest thereon, may be secured by a pledge and a first lien on all of the receipts and revenues derived, or to be derived, from the rental or operation of the property involved. Neither the payment of any bond, nor the interest thereon issued under the authority of KRS 56.440 to 56.550, shall constitute an indebtedness of the Commonwealth of Kentucky, nor shall any bond or interest thereon be payable out of any fund except such funds as may be derived from rentals or other revenues derived from the operation of the properties or from such revenues as may have been, or may be, available for such purpose, or purposes, by law." KRS Supp. 1950, 56.520(2).

Thus, we see in legislative contemplation there is no pledging of the general faith and credit of the State. In its planning for and issuance of the bonds, the Commission can go no further than the above, and the bonds issued pursuant thereto can rise no higher than this source. The proposed bonds on their face provide for their payment in strict accordance with the provision of the Act above:

"This bond is payable only from a fixed amount of the gross income and revenue to be derived from the

operation of said Capitol Annex Office Building which shall be set aside as a special fund and pledged for that purpose and identified as 'Capitol Annex Office Building Revenue Bond and Interest Redemption Fund,' and this bond does not constitute an indebtedness of the State Property and Buildings Commission or of the Commonwealth of Kentucky within the meaning of any constitutional provisions or limitations.

"A statutory lien upon the income and revenues of the said State Capitol Annex Office Building and appurtenances is hereby recognized as valid and binding and is created and granted to and in favor of the holder or holders of this bond, and a series of which it is a part and in favor of the holder or holders of the coupons attached hereto, and the income and revenues from the State Capitol Annex Office Building and appurtenances thereto shall remain subject to such statutory lien until the payment in full of the principal and interest on this bond and the series of which it is a part."

A debt in the constitutional sense arises out of a contract wherein the creditor is unconditionally entitled to receive and the debtor is obligated to pay. In Brash v. State Tuberculosis Board, 124 Fla. 652, 169 So. 218, 219, may be found this pertinent language: "Only where it can be clearly demonstrated beyond a reasonable doubt that a contemplated scheme of embarkation upon new capital ventures will not immediately or mediately, presently or in futuro, directly or contingently, operate to impose an added burden on the taxing power, or have the effect of impairing the public credit in futuro, will the consummation of such a debt incurring scheme be held authorized, absent the approving voice of the freeholders, as required by amended section 6 of article 9 of the Constitution [F.S.A.], in the case of municipal, county, and district enterprises. And, in the case of enterprises authorized by the Legislature to be embarked upon through state agencies, a particular scheme of financing will be held to be valid only where it is clearly demonstrable from the specific terms of the financing proposal itself that no tax burden or pecuniary liability of the state to appropriate or pay for the indebtedness about to be incurred will ever arise, or be looked to as security, in whole or in part, for repayment of the borrowed moneys."

Attacks similar to this have been made upon the issuance of other revenue bonds. Practically all if not every question raised here has been answered in favor of the bonds in those cases which have intermittently appeared before us through the past thirty years. Carter et al. v. Taylor, Judge, et al., 313 Ky. ——, 231 S.W.2nd 601; Speer v. Kentucky Children's Home et al., 278 Ky. 225, 128 S.W.2d 558; J. D. Van Hooser & Company et al. v. University of Kentucky, 262 Ky. 581, 90 S.W.2nd 1029; Estes v. State Highway Commission, 235 Ky. 86, 29 S.W.2d 583. It is obvious here that the bondholders may look only to such funds as may be derived from rentals or operation of the building. Under the proposal, there is no created tax burden or obligation of the State to appropriate or pay the indebtedness or to be looked to as security for same. The Legislature is not legally bound to make appropriations to continue the payment of rentals, even though such appropriations can be made within the constitutional limits of annual indebtedness. It might be stated here more or less parenthetically that half or more of the income from the building will be derived from the Federal Government in the form of rentals. We conclude therefore that these proposed bonds do not constitute an indebtedness of the State within any constitutional provision or inhibition.

We next concern ourselves with the contention raised by the cross-defendants re the declaration of rights as between them and appellees. In its petition below the cross-defendants asked the court to declare "(1) whether the leases entered into by said Commission for the use and occupancy of said State Capitol Annex Office Building by the various State agencies will provide adequate funds to support said bond issue; (2) whether the bonds are legally issued; (3) whether the bonds are exempt from taxation; (4) whether adequate funds will be available to complete said building and place it in operation; and (5) whether the bonds fully executed can be tendered to these cross-defendants within sixty days from June 12, 1950; and having determined any or all of said matters adversely to the validity or security of said bonds that said defendant State Property and Buildings Commission be ordered to return to these cross-defendants said certified check in the sum of

$50,000 and that its bid and proposal for the purchase of said bonds be canceled; * * *.''

After due consideration the court below adjudged:

''(a) It is adjudged by the Court that the defendant, State Property and Buildings Commission, is a legally constituted agency of the Commonwealth of Kentucky, and as such agency it has full right and authority to issue the bonds set out in the pleadings in the principal sum of Three Million, Nine Hundred Thousand Dollars ($3,900,000.00) and deliver said bonds to cross-defendant, Bear, Stearns & Company and their associates forming a syndicate.

''(b) It is further adjudged and declared by the Court that said bonds, when delivered by the defendant, State Property and Buildings Commission, to the Cross-Defendants, Bear, Stearns & Company and their associates forming a syndicate, will not be an obligation of the Commonwealth of Kentucky and will not violate Section 49 or any other section of the Constitution of Kentucky, and that said bonds will be payable only and from no other source except rentals collected by the State Property and Buildings Commission for the occupancy of said building.

''(c) It is further adjudged by the Court that said bonds and the coupons attached thereto will be exempt from all state, county, school and municipal taxes, including state income tax.

''(d) It is further adjudged and declared by the Court that the defendant, State Property and Buildings Commission, may legally enter into contracts with other state agencies of the Commonwealth of Kentucky to rent said building when it is made ready for occupancy, and that said rental or lease agreements shall be binding against the agencies so occupying said building for any biennium for which said lease agreements may be executed; that said lease agreements will not bind any future General Assembly to appropriate any money to pay said rentals for a period longer than any biennium for which an appropriation may be made by the General Assembly.

''(e) The Court further adjudges and declares that it is not within the Court's jurisdiction to declare that

the proposed plan as set out in the pleadings will produce sufficient funds to retire the bonds at their respective maturities and to pay the interest coupons attached thereto. This is a matter that the purchasers of the bonds must consider and did consider before they bid for the purchase of said bonds. And the Court further adjudges and declares that it is not within the province of this Court to declare or adjudge that sufficient moneys are available to complete the building. That is a matter which addresses itself to the defendant, State Property and Buildings Commission, and to the purchasers of the bonds. The pleadings and plan submitted to the Court, together with the proof heard by the Court, show what funds are available together with what funds have been heretofore expended and what funds will be available from the proceeds of the sale of the bonds. Therefore the Court declines to declare the rights of the parties upon such question.

"(f) The Court further adjudges and declares that it is not within the province of this Court to determine whether or not the bonds can be fully executed and tendered to the cross-defendant, Bear, Stearns & Company and their associates forming a syndicate, within sixty (60) days from June 12, 1950. The Court feels that this is not a matter necessary to be determined by this Court in these proceedings.

"(g) It is further adjudged and declared by the Court that the defendant, State Property and Buildings Commission, can legally execute and deliver, within the time specified in the contarct and bid, to the cross-defendant, Bear, Stearns & Company and their associates forming a syndicate, bonds in the sum of Three Million, Nine Hundred Thousand Dollars ($3,900,000.00) with interest coupons attached thereto, in the form and tenor provided in the Bond Order as amended, and that when said bonds are executed and delivered to Bear, Stearns & Company and their associates forming a syndicate, the cross-defendant, Bear, Stearns & Company and their associates forming a syndicate, upon their bid will become indebted to the State Property and Buildings Commission in the sum of their bid, to-wit, Three Million, Nine Hundred Thousand Dollars ($3,900,000.00) plus a premium of One Thousand, Two Hundred Sixty-One Dollars ($1,261.00) and that the Fifty Thousand

Dollar ($50,000.00) certified check accompanying their bid shall be a credit against the amount bid, and it is further adjudged that the defendant State Property and Buildings Commission, is entitled to retain the said certified check for the said sum of Fifty Thousand Dollars ($50,000.00) as a credit against the bid of the cross-defendant, Bear, Stearns & Company and their associates forming a syndicate.''

Cross-defendants complain of the failure of the Commission to enter into a trust indenture securing the revenue bonds and for the construction, operation and leasing of the building. We call attention to Subsection 3 of Section 8 of the Act dealing with the matter of expenditure of funds for any of the purposes mentioned therein, which states that the Commission shall have power to provide for same either by agreement with the State agency affected or by provision in the trust indenture securing the revenue bonds. It appears that the Commission did not choose to issue a trust indenture, but elected to carry out the provisions concerning the collection of rent, the creation of bond redemption fund, and every necessary and essential thing to be done, under the terms and agreements contained in the bond order which becomes a part of the contract between the Commission and bond buyer. The bond buyer knew about and understood this set-up, the method of renting the building and the manner of payment of rentals at the time they bid for these bonds. We are not disposed to undertake to go back of the contract. The same may be said as to the other interjected questions.

We conclude that the court properly resolved the matter throughout.

The judgment is affirmed.