GUTHRIE et al.

v.

CURLIN, Com'r of Highways, et al.

Court of Appeals of Kentucky.

Dec. 18, 1953.

John C. Talbott, Bardstown, Stanley B. Mayer, Bullitt, Dawson & Tarrant, Louisville,. for appellants.

J. D. Buckman, Jr., Atty. Gen., Jo M. Ferguson, Asst. Atty. Gen., for appellees.

CULLEN, Commissioner.

The appeal is from a judgment upholding the validity of Chapter 157 of the Acts of 1950, KRS 177.390 to 177.570, which provides for the construction and operation of turnpikes or toll roads, by the Department of Highways, to be financed through revenue bonds.

The action questioning the validity of the Act was brought by Ben T. Guthrie, a taxpayer suing on behalf of all taxpayers, against the Commissioner of Highways and the Department of Highways. Intervening petitions attacking the Act were filed by the Louisville Automobile Club, the Kentucky Motel Association, the Falls City Oil

Association, and by certain individual motel owners and oil dealers.

The Act is alleged to be unconstitutional in the following five respects:

1. It authorizes the creation of a debt of the Commonwealth in violation of Sections 49, 50 and 177 of the Constitution of Kentucky.

2. It delegates legislative power to the Commissioner of Highways in violation of Sections 27, 28 and 29 of the Constitution of Kentucky, and arbitrary power in violation of Section 2.

3. The title violates Section 51 of the Constitution of Kentucky because it does not properly express the subject of the Act.

4. It authorizes the expenditure of the State Road Fund upon a project that is not a public highway, in violation of Section 230 of the Constitution of Kentucky.

5. It denies equal protection of the law, and equal privileges and immunities in violation of Article IV, Section 2, and Amendment 14, of the Constitution of the United States.

We will discuss these contentions (all of which were rejected by the lower court) in the order listed above, under appropriate abbreviated headings.

### 1. Debt

■ The contention that the Act authorizes the creation of a debt is directed to that portion of Section 10 of the Act, KRS 177.480(3), which reads as follows:

"* * * the department may, in the proceedings authorizing the issuance of revenue bonds or revenue refunding bonds under the provisions of KRS 177.390 to 177.570 or in the trust agreement securing such bonds, covenant to pay all or any part of the cost of maintaining, repairing and operating any project constructed under the provisions of KRS 177.390 to 177.570, and, inasmuch as such project will at all times belong to the Common-

wealth, such covenant will have the force of contract between the Commonwealth and the holders of the revenue bonds or revenue refunding bonds issued on account of such project."

Other portions of Section 10, KRS 177.480 (2), provide that the tolls and other revenues of the turnpike may be used for costs of maintenance and operation, and that the rate of tolls and other charges shall be fixed at such sum as will produce sufficient income not only to retire the bonds but to pay the cost of maintenance and operation. It was stipulated by the parties to the instant action that the contract for issuance of bonds for the particular toll road project now under consideration by the Department of Highways will provide that the tolls and other revenues shall be used, first, for retirement of the bonds, and second, for the cost of maintenance and operation, and that if the tolls are not sufficient for the latter purpose the Department of Highways will pay the cost of maintenance and operation out of the State Road Fund. It was further stipulated that the cost of maintenance of the project under consideration, for the first 20 years, has been estimated by engineers to be in the neighborhood of $7,000,-000.

The appellants, in support of their contention that the Act authorizes the creation of a debt, argue that the contract for the particular project now under consideration, mentioned above, will create a debt of the Commonwealth in the amount of $7,000,000, for cost of maintenance and operation during the next 20 years. They rely upon State Highway Commission v. King, 259 Ky. 414, 82 S.W.2d 443, and Billeter & Wiley v. State Highway Commission, 203 Ky. 15, 261 S.W. 855.

In the King case a contract by the State Highway Commission, with the bondholders on a state toll bridge, to pay out of state highway funds any amount by which the toll revenues were insufficient to retire the bonds, was held to violate the prohibition in Sections 49 and 50 of the Constitution against creation of a debt. In the Billeter & Wiley case, road construc-

tion contracts of the State Highway Commission were held invalid to the extent that the amount of the contracts exceeded the amount of money appropriated to the highway fund for the fiscal biennium in which the contracts were let.

While we recognize some similarity, in theory, between the two cases relied upon by the appellants and the present case, we cannot find in the present case any real aspects of a debt from a practical standpoint. The maintenance of the public highways has been so long recognized as an obligation of government that it may be said to approach closely the character of an essential governmental function—one which the government has an inherent duty to perform. A contract by the Commonwealth that it will continue to maintain its highways is in reality nothing more than an affirmation of intent by the Commonwealth to continue to function as a government. As said by the Maryland court in Wyatt v. Beall, 175 Md. 258, 1 A.2d 619, 623, "The added element of contract with the bondholders would add nothing to the State's ordinary burdens."

We find nothing in the toll road statute, or in the contract referred to in the stipulation in this case, to indicate any contemplation that the state will maintain the toll road on a higher standard than other state highways, or will give the toll road preference in maintenance over other highways. As we construe the statute and contract, they mean merely that the state will include the toll road in the regular maintenance program of the Highway Department.

While in theory the Department of Highways may bite off more than it can chew in the way of toll roads to be maintained, the same possibility exists under the general highway laws with respect to designation of ordinary roads as part of the state highway system. The maintenance will of necessity be geared to the amount of money available.

We find ample precedent for upholding the maintenance provision of the toll road Act in the cases which sustained the con-

stitutionality of the Murphy Toll Bridge Act of 1928 and the Clark Amendment to that Act in 1930 (see now KRS 180.020 to 180.250). Bloxton v. State Highway Commission, 225 Ky. 324, 8 S.W.2d 392; State Highway Commission v. Veling, 230 Ky. 381, 19 S.W.2d 967; Estes v. State Highway Commission, 235 Ky. 86, 29 S.W.2d 583. The toll bridge Act, in KRS 180.130, *requires* the state to maintain and operate the bridges, and in KRS 180.170 authorizes the Department of Highways to *covenant* with the bondholders that it will maintain the bridges. Not only was the entire toll bridge Act held valid in the Bloxton and Estes cases, but in the Veling case the court had before it a bond contract which provided that the state would maintain the bridge, and this provision of the contract was held valid.

It is our opinion that there is no element of an unconstitutional debt in the statute or contract.

## 2. Delegation of Power

■ It is contended that the Act delegates legislative power to the Commissioner of Highways in violation of Sections 27, 28 and 29 of the Kentucky Constitution, and arbitrary power in violation of Section 2.

With respect to Section 2 of the Constitution, it will be sufficient to refer to the opinion in Commonwealth ex rel. Meredith v. Johnson, 292 Ky. 288, 166 S.W.2d 409, wherein it was pointed out that Section 2 has to do only with the exercise of arbitrary power over the lives, liberty and property of individuals, and not with the handling of state property or funds.

■ The appellants complain in a general way of some of the broad powers given the Commissioner of Highways with respect to the expenditure of money for surveys, the selection of the number and the location of toll roads, the joining of several toll roads in one bond issue, and the payment of maintenance costs. It is argued that no standard is fixed by which the Commissioner may be governed. The simple answer to this contention is that the powers in question are not legislative powers, but are inherently executive or administrative. It was so held, with respect to similar powers over toll bridges, in Bloxton v. State Highway Commission, 225 Ky. 324, 8 S.W.2d 392. To the same effect are the decision in Commonwealth ex rel. Meredith v. Johnson, 292 Ky. 288, 166 S.W.2d 409, upholding the appropriation of a $3,000,000 emergency fund to the Governor with a grant of broad discretion in its expenditure, and the decision in Preston v. Clements, 313 Ky. 479, 232 S.W.2d 85, sustaining the general powers of the State Property and Buildings Commission with respect to the purchase, sale and utilization of state lands and buildings.

■ The appellants attack particularly the provision of the toll road Act that authorizes the Department of Highways to sell revenue bonds "in such manner and for such price as it may determine will best effect the purposes" of the Act. KRS 177.450(1). It is argued that this gives the Department the uncontrolled power to sell the bonds at private sale, for a negotiated price. A complete answer to this contention is found in Eagle v. Corbin, 275 Ky. 808, 122 S.W.2d 798, in which it was held, under a statute with substantially identical wording, that there must be a public advertisement for bids in the sale of bonds by a governmental officer or agency. The statute here is not unconstitutional because it does not require public sale—the requirement of public sale is superimposed upon the statute by other law.

■ A further contention is that the Act delegates legislative power to the Commissioner of Highways because it gives him the absolute power to grant or refuse licenses or privileges for the operation of garages, filling stations, motels, etc., upon the right of way along the toll roads. Reliance is had upon the decision in Boyd v. Board of Council of City of Frankfort, 117 Ky. 177, 77 S.W. 669, and the text in 11 Am.Jur., Constitutional Law, sec. 234, p. 947, to the effect that uncontrolled discretion may not be vested in a public officer to grant or refuse a license to carry on "an

ordinarily lawful business." The distinction here is obvious. In the absence of legislation, anyone has the right to carry on a lawful business on privately-owned property, but no one has any right to carry on business on *state-owned* property. In regulating the use and occupancy of state property a state officer is not exercising a legislative function, but an administrative one.

We are of the opinion that the Act does not delegate legislative power, or vest arbitrary power, in violation of the Constitution.

### 3. Title

The title of the toll road Act is as follows:

"An Act to facilitate vehicular traffic in the Commonwealth of Kentucky by providing for the construction, maintenance, repair and operation of turnpike projects; declaring them to be limited access facilities; conferring powers and imposing duties upon the Department of Highways; providing for financing the construction of such projects by the issuance of revenue bonds of the Commonwealth, payable solely from tolls and other revenues; providing that no debt of the Commonwealth shall be incurred in the exercise of any such powers; providing for the collection of tolls and other revenues to pay such bonds and the interest thereon and the cost of maintenance, repair and operation of such projects; making such bonds exempt from taxation; providing for condemnation; and authorizing the issuance of revenue refunding bonds. This Act is to be known as the Montgomery-Keck-Beauchamp Super Highway Act."

■ It is contended that the title is misleading because, in the latter part, it states that the Act provides for the collection of tolls and other revenues to pay the cost of maintenance, repair and operation, whereas the Act actually provides that such cost may be paid out of the State Road Fund. However, when the title is considered as a whole, we do not find it to be misleading. It will be observed that the first part of the title states that the Act provides for the construction, maintenance, repair and operation of turnpikes and for financing the *construction* by revenue bonds; also, that the Act confers powers and imposes duties upon the Department of Highways. The language in the latter part of the title does not say that the cost of maintenance, repair and operation will be paid *solely* out of tolls, while the first part of the title does say clearly that the cost of construction will be paid solely from tolls. There is at the most only a possibility that someone might have been misled, and we cannot invalidate a legislative Act on so slim a ground.

■ It is argued that the title is defective because it does not mention certain of the details dealt with in the Act. There is no merit in this argument, because this Court has held consistently that a title need not be an index or table of contents for the Act. One of the most recent cases so holding is Preston v. Clements, 313 Ky. 479, 232 S.W.2d 85.

### 4. Diversion of Road Fund

■ Section 230 of the Kentucky Constitution provides, generally, that the State Road Fund may be expended only on "public highways." Section 17 of the toll road Act, KRS 177.550, provides that a toll road shall become part of the state highway system after the bonds have been retired. The argument is made that a toll road does not become a public highway until it becomes a part of the state highway system, and therefore Section 230 of the Constitution is violated by those provisions of the toll road Act authorizing payments out of the State Road Fund for surveys and for maintenance, prior to retirement of the bonds.

We can find no basis for the contention that a toll road is not a "public highway". It is owned by the state and is open to public travel. Authorities from other jurisdictions seem to be unanimous in holding

that a toll road is a public highway. See 54 Am.Jur., Turnpikes and Toll Roads, sec. 2, p. 494; Fenton v. Margate Bridge Co., 24 N.J.Super. 450, 94 A.2d 848; State ex rel. Kauer v. Defenbacher, 1950, 153 Ohio St. 268, 91 N.E.2d 512.

It is our opinion that the Act does not violate Section 230 of the Constitution.

### 5. Equal Protection, Privileges and Immunities

The contention that the Act denies to appellants the equal protection of the law, and equal privileges and immunities, is so completely void of merit as not to warrant discussion.

### Construction of Act

In addition to the constitutional questions, two questions of construction of the Act are raised.

The first question deals with KRS 177.-440, which provides, in part:

"All turnpikes established under the provisions of KRS 177.390 to 177.570 are declared to be limited-access facilities, within the meaning and subject to the provisions of KRS 177.220 to 177.310, and KRS 177.990. * * *"

KRS 177.230, which is one of the sections of the limited-access statute referred to in KRS 177.440, provides that the authority to establish limited-access highways in cities "shall be subject to such municipal consent as may be provided by law." The question is whether the consent of a city is necessary to the construction of a portion of a turnpike within the city boundaries.

It is our opinion that the reference, in KRS 177.440, to the limited-access statute, was intended to adopt only such portions of the limited-access statute as relate to control of access to the highway, and was not intended to adopt the portions relating to location or establishment of the highway. This is so because the toll road Act contains its own provisions for location and establishment.

The second question relates to KRS 177.540, which provides, in part:

"The department is hereby authorized to provide for the issuance of turnpike revenue refunding bonds of the Commonwealth for the purpose of refunding any bonds then outstanding * * * and, if department shall so determine, for the additional purpose of constructing improvements, extensions, or enlargements of the turnpike project or projects in connection with which the bonds to be refunded shall have been issued. * * *"

The question is whether outstanding bonds must in every case be refunded when it is desired to issue additional bonds for extensions, improvements or enlargements. While a strict literal interpretation of the statute might require an affirmative answer to this question, such an answer would not only be an absurd and unreasonable one, but would be inconsistent with practically every other revenue bond statute of this state. We are of the opinion that the Legislature did not intend to limit the power to issue additional bonds for extensions and improvements to those cases in which the original bonds are being refunded.

We perceive no error in the judgment, and it is affirmed.