**Larry J. HOPKINS et al., Appellants,**

v.

**Wendell H. FORD et al., Appellees.**

Supreme Court of Kentucky.

Feb. 6, 1976.

Gerry L. Calvert, Lexington, for appellants.

Ed W. Hancock, Atty. Gen., Carl T. Miller, Jr., Asst. Atty. Gen., Frankfort, for appellees.

STEPHENSON, Justice.

This appeal presents the question of the constitutionality of Part 6, Section 12 of the Appropriations Act of 1974. The Franklin Circuit Court entered judgment concluding that the Act does not violate the Kentucky Constitution. We affirm.

Part 6, Section 12 of the Appropriations Act is as follows:

"12 In the event General Expenditure Fund revenue estimate, plus surplus brought forward, for the 1974–75 fiscal year exceeds $916,371,095, such excess is hereby appropriated to the General Contingency Fund which is hereby created, and may be allocated, upon order of the Governor, to state agencies for the following purposes:

"(1) Statutory cost increases not otherwise provided for in this Act;

"(2) Unusual reduction or loss of other funds anticipated in the 1974–76 budget, which loss would cause an undesirable reduction in state program service levels;

"(3) Extraordinary inflationary cost increases which would otherwise cause an undesirable reduction in service levels;

"(4) Unanticipated cost increases in renovation and construction projects provided for in this Act;

"(5) Contingent or provisional projects."

Appellants argue that (1) Part 6, Section 12 is an unconstitutional delegation of legislative power in that it gives the Governor unrestricted discretion to expend public funds without any limits as to either dollar amount or program purposes on the basis of estimated revenue; (2) the Act is void for the reason it is so vague, ambiguous and indefinite as to be impossible to ascertain the legislative intent of the act; and (3) if found to be constitutional, the Governor has abused his authority by allocating funds based upon his own priorities.

The answer to argument three is found in the findings of fact by the trial court:

"2. The Governor on June 6, 1974, and on July 19, 1974, allotted funds to state agencies from the General Contingency Fund pursuant to Section 12, Part 6, of the Appropriations Act of 1974.

"3. The Commissioner of the Executive Department for Finance and Administration reported in writing the allocations referred to in Paragraph 2 to the Joint Interim Committee on Appropriations and Revenue, and the Governor consulted with the Committee in regard to such adjustments pursuant to Section 14, Part 6, of the Appropriations Act of 1974.

"4. The allocations made by the Governor referred to in Paragraph 2 were contemplated in the Governor's budget proposal and are supported by the work papers and other records pertaining

thereto pursuant to Section 15, Part 6, of the Appropriations Act of 1974."

█ The appellants do not assert that the findings of fact are clearly erroneous; nor do they point out any specific action argued as an abuse of power. Our review of the record reveals that these findings were based upon testimony of appellees' witnesses and that no contradictory testimony was introduced. Consequently, we are of the opinion there is no showing of abuse of power in allocating surplus funds.

█ Appellants' contention as to argument two is centered on Part 6, Section 12, Subsection 5, "contingent or provisional projects." Appellees' witness testified that a "contingent project" is defined as one which has been approved but has not been funded because of lack of present and prospective funds. He defined a "provisional project" as one for which federal funds will be provided on a matching basis, also unexpected casualty losses such as a state building destroyed by fire. There is nothing in the record to suggest that these definitions were not fully understood by the executive and the legislature. Subsections 1, 2, 3, and 4 are manifestly clear and unambiguous. We are of the opinion that the terms of the Act are neither vague, ambiguous or indefinite.

Consideration of argument one necessitates a reading of Section 11 of the Act in context with Section 12.

In summary, Section 11 recites the complex nature of the economy and its uncertainties, the impact of the energy crisis together with the unreliability of federal funding under present policies, the necessity mandated by the budget act that expenditures for each fiscal year shall not exceed the total financial resources for the same fiscal year, actions to be taken to prevent an overdraft or deficit in any fiscal year by reducing expenditures, and, finally, a descending list of priorities for effecting reductions in appropriations in the event of the threat of a deficit. We note that elimi-

nating of all *contingent* or *provisional* appropriations is the first reduction to be made.

Thus Section 11 recognizes and provides for the contingency of a threat of deficit in appropriations due to reduced revenues and makes provisions for reductions, while Section 12 recognizes and provides for the contingency of a surplus in revenues and makes provision for the use of surplus in the five categories set out above.

Appellants' principal argument as to the constitutionality of Section 12 is that this portion of the Act is not an appropriation within the meaning of Section 230 of the Kentucky Constitution for the reason that the questioned section fails to provide for dollar or purpose limitations, and thus is an unconstitutional delegation of legislative power.

Section 230 of the Kentucky Constitution provides that "No money shall be drawn from the State Treasury, except in pursuance of appropriations made by law; . . . ." We find this section construed in *Commonwealth v. Johnson,* 292 Ky. 288, 166 S.W.2d 409, 414 (1942), thusly: "It will be observed that this language does not undertake to prescribe the form to be used in making appropriations nor does it require that appropriations be detailed, definite, or specific." And in *Ferguson v. Oates,* Ky., 314 S.W.2d 518, 521 (1958), this court said the purpose of this section " 'was to prevent the expenditure of the State's money without the consent of the Legislature.' "

Appellees remind us that the Kentucky Constitution is not a grant of power. It operates solely as a limitation of power, and an act of a state legislature is legal when the constitution contains no prohibition against it. See *Rhea v. Newman,* 153 Ky. 604, 156 S.W. 154 (1913).

Appellees direct our attention to various appropriation acts in prior years which appropriate funds, without dollar limits and contingent upon the receipt of revenue, to certain specifically named funds: the State Road Fund, the Minimum Foundation Program, and the Capital Construction Fund, which in recent years has been the fund designated to receive surplus revenue to be allocated by the Governor. These acts of course are not questioned here. On the other hand, appellants cite past appropriation acts which appropriate surplus funds with maximum dollar amounts. These are contingent provisions, and there is no real argument that the legislature may not make contingency appropriations such as those cited by appellants. We are of the opinion that the provisions of Section 230 of the Constitution are not so limited as to require fixing dollar amounts in order to validate allocation of surplus revenue in the context of the statute in question. The appropriation is limited so that expenditures may not exceed revenue as provided in the budget act. The principle that the Constitution does not prohibit some delegation of legislative power is well settled. *Commonwealth v. Associated Industries of Kentucky,* Ky., 370 S.W.2d 584 (1963). It is all a matter of degree to be determined in the light of specific acts and circumstances. We can only say that the delegation of authority here is not such a degree of delegation by the legislature as would amount to an abdication of the legislative duty to make appropriations under Section 230 of the Constitution.

A further argument of appellants is that the Act authorizes expenditures of surplus funds based upon an *estimated* surplus in revenue. With regard to this argument, our attention is directed to the method of financing state government. The budget for the operation of state government is proposed and appropriations made by the legislature based upon *estimated revenue.* Admittedly, this is not an exact science. And forces and circumstances unforeseen at the time of the estimate can radically alter the total revenues actually received or during the continuing forecasting of revenues the same can occur. For purposes of this case, we can see no difference insofar as the power of the legislature is concerned. The

situation here is controlled by the requirements of the budget act which forbid actual spending of excess revenue. It is apparent that state government could not operate without basing expenditures upon anticipated revenues; and actual surplus, in our opinion, would be in the same category as estimated surplus so far as the question of requirement of dollar limitation is concerned.

Appellants' argument that the actions of the Governor could and probably would lead to a deficit is negated by the provisions of the Act; and, in any event, it is not suggested in this record that such actions have been taken or are contemplated.

 It is not our function to sit in judgment upon the wisdom of legislative acts, but only to determine the power of the legislature in accordance with the provisions of the Kentucky Constitution. It is apparent that appellants' arguments are largely directed to the possibility of unscrupulous actions on the part of the executive which possibly could occur and thwart legislative intent. None is suggested here, and we can only say that in this respect the wisdom of the legislature is being called into question and that area does not lie within our power to adjudicate.

We conclude that the Act does not violate Section 230 of the Constitution, nor is it an unconstitutional delegation of legislative power.

The judgment is affirmed.

REED, C. J., and CLAYTON, JONES, LUKOWSKY, PALMORE and STEPHENSON, JJ., sitting.

All concur.

STERNBERG, J., not sitting.