**HOTEL AND RESTAURANT ASSOCIA-TION OF KENTUCKY, INC.,
et al., Appellants,**

v.

**COMMISSIONER OF DEPARTMENT OF INDUSTRIAL RELATIONS et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 8, 1963.

Rehearing Denied Feb. 14, 1964.

Claude S. Eddleman, Jr., Louisville, Richard P. Moloney, Sr., Moloney & Moloney, Lexington, Bernard H. Barnett and Charles F. Wood, Greenebaum, Barnett, Wood & Doll, L. L. Pedley, Louisville, for appellant.

John B. Breckinridge, Atty. Gen., H. N. McTyeire, Asst. Atty. Gen., James C. Osborne, Asst. Atty. Gen., Frankfort, for appellees.

Herbert L. Segal, Louisville, J. W. Brown, Ben Gettler, Jonas B. Katz, Jerry F. Venn, Cincinnati, Ohio, amici curiae.

CLAY, Commissioner.

This controversy involves the validity of a wage order, issued on June 6, 1962 by the Commissioner of Labor, which fixed a new minimum wage scale for women and minors employed in the hotel and restaurant industry in Kentucky. It was issued under the provisions of KRS 337.210 to 337.300. On appeal to the Franklin Circuit Court (authorized by KRS 337.310) the order was affirmed.

Appellants attack the order on eight specific grounds which involve questions of whether the Commissioner acted in excess of his powers, or contrary to the statutes, or contrary to the evidence. (The scope of review is prescribed in KRS 337.310.)

■ The first contention is that the Commissioner improperly made this order mandatory, whereas KRS 337.250(3) only authorizes him to issue a "directory" order. That section relates to the entry of an original order covering an industry not theretofore subject to minimum wage rates. This order was a *revision* of an existing order (entered in 1954) and under KRS 337.290 and 337.300 the Commissioner is authorized to declare the order mandatory.

■■ It is next contended the Commissioner based the determination of a fair minimum wage rate on *average wage rates* paid in other states. The record does not support this contention. Even if this factor was accorded weight, it is pertinent and appellants present no satisfactory reason why average wage rates may not be considered.

■ It is next contended the Wage Board (appointed by the Governor at the request of the Commissioner) failed to hold a *public hearing* as provided by administrative regulations. A public hearing was scheduled and the notice of it provided the Board should be advised of the names of those who wished to present evidence. No

one so advised the Board and when the time of the hearing arrived the Board noted that "the public has not appeared". Apparently some witnesses were available who wished to testify. However, they had not complied with the reasonable requirement of the notice and the Board had some justification for proceeding as it did.

Conceding, however, that this abortive hearing violated an administrative regulation, the record indicates no one was prejudiced thereby. Subsequently *four* public hearings on this proposed minimum wage order were held both at Frankfort and Louisville. No one was deprived of the right to be heard and this record shows that all available evidence for and against the wage order was presented and considered.

■■ It is next contended the Commissioner failed to follow the "cost of living" index, consideration of which is required by KRS 337.230 and was recognized as significant in Middlekamp v. Willis, Ky., 267 S.W.2d 924. The contention is that the "cost of living" index showed an increase in living costs since the date of the earlier order (in 1954) of approximately 25 percent, while the new order increased wages in some instances as much as 150 percent. Appellants' theory seems to be that the Commissioner is without authority to increase the wage rate except in strict conformity to some established "cost of living" increase percentage. There are several answers to this contention.

In the first place, the "cost of living" index is simply one of the factors which should be taken into consideration by the Commissioner. Secondly, the "cost of living" index may be examined to determine a basic minimum subsistence level without regard to annual increases or decreases. Thirdly, there is no requirement of the law that an increase in wage rates must be geared to the percentage increase in the cost of living over any given period of time. The record fails to show the Commissioner improperly utilized the "cost

of living" index as one of the factors in determining the new minimum wage rates.

■ It is next contended the Commissioner did not properly compare the cost of living in Kentucky with that of other states. The argument seems to be that some unspecified wage-per capita income ratio existing in other states must be accepted by the Commissioner as governing the wage rates. Nothing in the law does, or should, impose such a limitation upon the Commissioner. We are of the opinion that due and proper consideration was given to the comparative per capita income factor.

■ It is next contended the Commissioner took into consideration "cost of living" budgets of industrial workers generally rather than those employed in the hotel and restaurant business. The argument apparently is that since the latter have historically been in the lowest paid classification, their subsistence level must be substantially lower than those of other industrial workers. We think the Board and the Commissioner could properly use data concerning other industrial workers to determine what constitutes a minimum "cost of living" budget. A bare subsistence level of those in industrial employment would not be determinable simply on the basis of the type of occupation. It is also argued that those employed in the restaurant industry were shown to be living well on a budget supported by a wage rate substantially less than that fixed in the new order. There was ample evidence to support the finding that a lesser increase than that allowed by the new order would not constitute a fair livable minimum.

■ It is next contended the Commissioner did not consider the effect of the new proposed minimum wage rates on the economy of the industry. On behalf of the appellants there was evidence to the effect that some marginal establishments might be put out of business by this increased minimum wage and that other establish-

ments might have to curtail their services or cut down on the number of persons employed. This specter confronts those engaged in any business and the evidence is of a highly speculative character. Some disruption of business may well be experienced and individual hardship may result. But this does not militate against the legality of an order which is designed to benefit a general class of employees. See West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703. It may be pointed out that there is substantial evidence in the record that many of those engaged in this industry in Kentucky are at the present time successfully conforming to an equal or higher wage rate than that fixed in the new order. It cannot be said the Commissioner did not give due consideration to the impact of the revised minimum wage rates upon this industry generally.

■ Finally it is contended the Commissioner did not consider the effect of tips which might be received by "service" employees in determining the minimum rates and should have made a classification based thereon. It may be conceded that tipping is a universal custom in this industry. The record, however, shows a wide disparity in the amount of tips and very serious problems are presented in recognizing this wholly uncertain income, received as a gratuity from persons other than the employer, as a part of the wage rate. A wage rate anticipating a certain amount of tipping might not fairly fix a minimum for those workers who receive no tips or whose tips are not substantial. In addition, by contract or business policy the employer could deprive the employee of this potential source of income. See Williams v. Jacksonville Terminal Co., 315 U.S. 386, 62 S.Ct. 659, 86 L.Ed. 914.

In view of the practical difficulties involved, we believe the Commissioner had a right to reject possible and uncertain tips as a necessary increment of a wage rate or as requiring a special classification of employees. Certainly the record contains ample evidence to justify this ruling.

We can find nothing in the record which would invalidate the wage order before us, and the circuit judge correctly upheld it.

The judgment is affirmed.