Thelma GERING, Appellant,

v.

BROWN HOTEL CORPORATION, Appellee.

Court of Appeals of Kentucky.

Nov. 19, 1965.

Louis Cohen, Cohen & Cohen, Louisville, for appellant.

Harry B. Miller, Miller, Griffin & Marks, Lexington, amicus curiae.

Charles F. Wood, Greenebaum, Barnett, Wood & Doll, Louisville, for appellee.

CLAY, Commissioner.

This action was brought by plaintiff appellant under KRS 337.360 against her employer, defendant appellee, to recover the difference between wages actually paid and

those prescribed by a minimum wage order of the Commissioner of Labor during the period September 4, 1962, to February 13, 1964. Plaintiff's claim was dismissed on motion for summary judgment. The sole question is whether the minimum wage order involved became effective August 1, 1962, or February 14, 1964.

This order was issued June 6, 1962, and recited that it should become effective August 1, 1962. Shortly thereafter certain interested employers filed a "Petition for Review and Appeal" from this order, as authorized by KRS 337.310. The order was affirmed by the Franklin Circuit Court and that judgment was affirmed on appeal by this Court. Hotel & Rest. Ass'n v. Commissioner, Ky., 374 S.W.2d 501.

In that lawsuit an injunction was issued by the circuit court which had the effect of staying the enforcement of the wage order pending the final determination of its validity. It is defendant's basic contention that this injunction postponed the effective date of the wage order from August 1, 1962, until February 14, 1964, when the decision of this Court became final. Such argument is demonstrably untenable.

Before examining pertinent parts of the record in the former lawsuit, certain general observations may be made. The minimum wage order was presumptively valid, and its validity was upheld by the circuit court and by this Court. At no stage of the proceedings did any court modify such order in any respect. The effective date recited in the order, August 1, 1962, was as much a part of it as any other provision contained therein. It is difficult to understand how those who lost the original suit (and others relying on it) could claim that by the mere prosecution of unsuccessful litigation they gained substantive rights and substantial benefits. Such a result possibly could be realized only under the most extraordinary conditions. We have none here.

In the controlling case the petitioners (and employers generally) did obtain a form of relief, when at their request the enforcement of the wage order was suspended until the rights of the parties could be finally adjudicated. But to say that suspending enforcement of the order effectively killed it for the suspended period is quite another thing. Let us retrace the proceedings in Hotel & Rest. Ass'n v. Commissioner, Ky., 374 S.W.2d 501.

In the original petition for review the petitioners asked for temporary relief as follows:

"(6) For a temporary injunction enjoining the Commissioner of Industrial Relations *from taking any action* in respect to the minimum wage rates set forth in Exhibit A or *in enforcing* any provisions of the regulations set forth in Exhibit A, or *taking any steps to enforce* the order dated June 6, 1962, *pending final determination of the issues herein set forth.*"[1] (Our emphasis.)

This was a normal and proper request, and relief was granted by the circuit court in the following terms:

"IT IS ORDERED THAT, Owen L. Kerth, Commissioner of the Department of Labor of Kentucky and his successors in office, be, and he is hereby enjoined until the disposition of the appeal of this cause from putting into effect the minimum wage order of June 6, 1962, which wage order he proposes to make effective August 1, 1962, and he, and his successors are *further enjoined from fixing and putting into effect the minimum wage rate set forth in said order until such time as this court has entered its final judgment on this appeal.*" (Our emphasis.)

 Defendant seizes upon the words "fixing and putting into effect" as the pillar upon which it erects its whole argu-

---

1. Item (7) in the prayer was substantially the same.

ment. The contention is that by these words the circuit court thereupon took over the wage-fixing function and completely nullified the Commissioner's order. There does appear some ambiguity in the use of the word "fixing" in the injunction order. The wage rates *had already been fixed* and the Commissioner was not threatening to fix any others. The word was meaningless surplusage. At most it was an expression put in the order to make sure the Commissioner would do nothing in the premises pending the appeal. We simply cannot take this word out of context and say that it constituted a decision of the trial court to then and there modify the wage order by changing its effective date, even assuming it had the power to do so (which we will discuss later). Subsequent developments make certain this conclusion.

The injunction order had required the petitioners to post a $100 injunction bond under CR 65.05. The respondents in that suit were not satisfied with such nominal bond because it was obviously insufficient, if the wage order was eventually upheld, to meet the numerous employees' claims that would probably accrue during the pendency of the legal proceedings. On July 30, 1962, respondents requested this Court to dissolve the injunction or, in the alternative, to require the petitioners to post a more ample bond, or to set up an "escrow account". This motion recited:

"If said injunction is not dissolved prior to August 1, 1962, many thousands of employees will not receive the wages required to be paid by the mandatory minimum wage order issued by Owen L. Kerth, Commissioner of the Department of Labor, on June 6, 1962, to take effect August 1, 1962. These employees will have no adequate remedy at law to collect the wages provided by said wage order in case it is finally concluded that the minimum wage order is valid and enforceable. In any event, if the wage order is upheld, the necessary result would be that there would exist thousands of suits on the part of employees against their employers to be paid the amounts provided by the order."

During the hearing on this motion, and in subsequent proceedings, no one even faintly suggested that the contingency above recited would not become an actuality in the event the wage order was upheld. The whole controversy in this Court with respect to the temporary injunction involved the question of what pledge should be required of employers protected by it to secure the payment of claims accruing while the wage order was temporarily suspended.

■ On August 9, 1962, this Court sustained respondents' motion and modified the temporary injunction to require the setting up of an "employees' escrow account" or a sufficient bond *"to guarantee the payment of the increase in wages of his employees in the event the order of the Commissioner is ultimately held to be a valid one."* (Our emphasis.) Subsequently this Court (on September 12, 1962) set aside that order, but such ruling involved only the matter of *security,* and of course did not affect the matter of potential *liability.* Three members of this Court did not concur in the last order, on the ground that the employers who were to benefit by the suspension of the wage order should be required to guarantee the payment of lost wages in the event it was held valid. We point this out to re-emphasize the fact that no one considered the possibility that the suspension of the wage order had changed its effective date or had altered the ultimate legal rights of the parties.

All of the proceedings with respect to the posting of a bond were based upon the assumption that in the event such wage order was adjudged valid, employers benefiting by reason of the temporary injunction would be incurring liability while it was suspended. It is not even contended here and now that when this Court relieved petitioners and others from executing a sub-

stantial bond they were thereby relieved of their potential liability.

The entire proceedings in the controlling case followed a proper and familiar pattern. Petitioners were attacking a wage order which apparently would require many employers to pay higher wages than in the past. Believing in their position and seeking to avoid immediate compliance, they sought to maintain the status quo until the matter could be finally determined. At their request the enforcement of the order was temporarily suspended. This was all the petitioners sought and all they were granted.

In the light of the proceedings above discussed, we are not persuaded by defendant's argument. It seems to be that when the trial court enjoined the Commissioner of Labor from putting the wage order into effect until the entry of a final court order, the court thereupon went into the wage-fixing business and nullified the wage order. It is even stated in defendant's brief that the Commissioner *violated* the injunction by failing "to tear down the order until such time as this Court had ruled he could put it back together again". We have difficulty following this concept.

Defendant states in its brief "If the Court had merely postponed the enforcement of the proposed wage order until the Court of Appeals had ruled on the issue, then the appellant's position would be sound". By reading the record of the proceedings in the original case it is impossible to construe the injunction as proposing to accomplish or as accomplishing any other objective. Defendant bases its whole contention upon a distorted construction of a word used in that injunction which is completely incompatible with the purpose of the order, the nature of the proceeding, and the subsequent acts of the parties.

The brief for amicus curiae extends the argument that the Commissioner of Labor would be violating the injunction if any effectiveness could be given to the August 1, 1962, date and further contends the petitioners involved in the original case (and the defendant) acquired some *equitable* rights during the proceedings. We hold that there was no semblance of a violation of the injunction and are at a loss to discover how the defendant could have acquired any equity in or out of those proceedings.

It is a rather unique theory that the failure to comply with a law or a lawful order over a period of time creates an equitable right in the violator to be absolved of the consequences. At the instance of the affected employers the trial court and this Court relieved them of immediate compliance with the wage order while its validity was being tested. Further, this Court (perhaps too indulgently) relieved those employers of the necessity of posting a substantial bond (as required by CR 65.05(1)) to secure the payment of damages to prospective claimants who would suffer losses by reason of the suspension of the wage order, in the event it was upheld. Since the employers were unsuccessful in their attempt to invalidate the wage order, they must accept it as they found it. As before mentioned, the effective date is as much a part of such order as any other provision in it.

We have heretofore considered only the inevitable conclusion which must be drawn from an examination of orders and proceedings in Hotel & Rest. Ass'n. v. Commissioner, Ky., 374 S.W.2d 501. There is, however, a more fundamental reason why the proceedings in that case cannot be construed as permanently changing the effective date of the wage order. This involves serious constitutional questions. Appellant calls our attention to section 27 of the Kentucky Constitution relating to the separation of powers, but perhaps section 15 is more specifically applicable. It provides:

"No power to suspend laws shall be exercised unless by the General Assembly or its authority."

This would apply to a valid administrative order, which has the same legal force as a statute. Linkhous v. Darch, Ky., 323 S.W.2d 850.

 The constitutional provision cannot be construed strictly in its literal sense because the judicial branch has power and authority to stay temporarily the enforcement of such order pending judicial review of its validity, which is a form of suspension. See Jaffe, Judicial Control of Administrative Action, Chapter 18, page 687 et seq.; Scripps-Howard Radio v. Comm'n., 316 U.S. 4, 62 S.Ct. 875, 86 L.Ed. 1229. But it is only because this provisional relief does *not* alter the ultimate effectiveness of the order that it is constitutionally valid. Such relief excuses only immediate compliance, and when it is terminated the respective rights the parties had in the beginning are left unabridged.

Particularly where such an order requires the payment of money, a stay simply delays the day of reckoning. It does not extinguish obligations to comply from the effective date of the order. This is the only justification for the requirement of a bond, or an escrow agreement, or the keeping of special records. See Jaffe, Judicial Control of Administrative Action, chapter 18, page 701 et seq. If a court should purport to change the effective date of a valid law or administrative order other than in the form of provisional relief to parties in a lawsuit, it would certainly be suspending the law in violation of section 15 of the Kentucky Constitution.

From our discussion above, it is clear the trial court neither undertook nor possessed the power to alter the effective date of the wage order in controversy. When it affirmed such wage order and this Court affirmed that judgment, the order constituted the law beginning August 1, 1962. This, of course, is not giving retroactive effect to the order (as contended by amicus curiae). We refer the reader to any standard dictionary.

We are aware that many employers who postponed compliance with the wage order (and paid less than the minimum wage) in the hope that it would be declared invalid are now faced with the obligation of reimbursing employees for past due wages. This is a business, not a legal matter. There is no ground upon which we could annul the rights of employees acquired under that order. The final adjudication of this Court was that employers were legally bound by it. Though employers in defendant's position won a temporary battle, the indisputable fact, however unpalatable, is that they lost the war.

The trial court was in error in granting the defendant summary judgment.

The judgment is reversed for proceedings consistent with this opinion.