COMMONWEALTH of Kentucky, ex
rel. David L. ARMSTRONG,
Attorney General, Appellant,

v.

Martha Layne COLLINS, Governor, Commonwealth of Kentucky, Lester M. Thompson, Secretary, Finance and Administration Cabinet, and Frances Jones Mills, Treasurer, Commonwealth of Kentucky, Appellees.

Supreme Court of Kentucky.

May 1, 1986.

Robert L. Chenoweth, Sp. Asst. Atty. Gen., Bryan, Fogle & Chenoweth, K. Gail Leeco, Asst. Attys. Gen., Frankfort, for appellant.

J. Michael Noyes, Gen. Counsel, Office of the Governor, Frankfort, A. Wallace Grafton, Jr., Sheryl G. Snyder, Virginia H. Snell, Wyatt, Tarrant & Combs, Louisville, for appellees; Lee Sisney, Charles Wickliffe, Finance and Admin. Cabinet, Frankfort, Henry Watson, III, Cynthiana, of counsel.

STEPHENS, Chief Justice.

The basic issue we address is to what extent, if any, the General Assembly of the Commonwealth may, in adopting a budget bill and based on the financial condition of the Commonwealth provide therein for the reduction, elimination and transfer of appropriated funds, and for all practical purposes, provide as a result thereof, that the effectiveness of certain existing statutes is temporarily modified.

### BACKGROUND

At its regular session in 1984, the General Assembly passed a biennial budget.[1]

---

1. House Bill 474, Chapter 418 of the 1984 Acts hereinafter referred to as HB 474, or the budget bill.

This document appropriated the revenue for the Commonwealth and determined how that revenue would be expended for the operation, maintenance and support of the three branches of state government and the myriad of ancillary state agencies and programs.[2] This document, included a reduction in appropriations for various salary increases and transfers of funds from various trust and agency accounts to the General Fund to cover central administrative expenses.

In addition, at the same session the General Assembly passed corollary legislation[3] which conferred upon the General Assembly the authority to provide, in a budget bill, for the suspension or modification of the operation of an existing statute if the General Assembly found that such action is required by the financial condition of state government.

## PROCEDURAL HISTORY

The appellant, Attorney General of the Commonwealth, on June 6, 1984 filed a petition for declaratory judgment in the Franklin Circuit Court challenging the constitutional validity of those legislative acts.[4] Basically, the petition claimed that the legislative enactments violated the prescriptions of Section 51 of the Kentucky Constitution, both as to the germaneness of the titles of the acts and as to the failure to follow the procedural requirement of Section 51 for the enactment and publication of amendments to existing law. A temporary restraining order was entered by the trial judge which prevented various offi-

cials in the Executive branch of government from transferring funds from certain designated trust and agency funds[5] and other special accounts to the general operating fund of the Commonwealth. Following normal briefing and arguments, the trial court entered its findings of fact, conclusions of law and declaratory judgment. A notice of appeal was timely filed by the Attorney General and upon appropriate motion, and for obvious reasons, we transferred the appeal directly to this Court.

## DECISION OF THE TRIAL COURT

In rejecting the contentions of the Attorney General in the main, the trial court declared that the General Assembly has, under Ky. Const. Secs. 15 and 51, the authority to "suspend existing laws in a budget bill if the provision is germane to the broad subject of appropriations." It further declared that the procedural requirements of Ky. Const. Sec. 51 were not applicable to the challenged statutes because they only effected a "suspension" of existing statutes and were not an "express or implied repeal" of existing statutes.

The trial court also upheld the General Assembly's authority to suspend previously authorized salaries, trust and agency funds.[6] It declared certain transfers of funds invalid because they accomplished more than "the mere suspension of existing statutory provisions" and because they were not "germane" to appropriations within the aegis of Kentucky Constitution Section 51.[7] The former ruling is before us on appeal, the latter is not.

2. The specific provisions of the statutes under attack will be more fully described in the appropriate parts of this opinion.

3. Senate Bill 294, Chapter 410 of the 1984 Acts hereinafter referred to as SB 294 or KRS 446.085.

4. Mr. Thompson was sued in his official capacity. He resigned the position of Secretary of the Finance and Administration Cabinet, and the Governor of Kentucky has appointed Gordon C. Duke to that office.

5. For a description of trust and agency funds, see *infra.,* p. 18, *et. seq.*

6. Specifically the trial court approved the transfer of funds in the following areas: Board of Elections; Kentucky Development Finance Authority; University of Kentucky; Banking and Securities; Fish and Wildlife Resources; Road Fund; Capital Construction of Road Fund; Education and Humanities; Local Jail Support (medical contracts).

7. Those declared invalid were: Unified prosecutorial system, only insofar as it provides that a county or a circuit will receive funds proportional to the state's total criminal case load; Auditor of Public Accounts, only insofar as it imposes additional duties on the Auditor; Corrections, only insofar as it creates a scheme for

## CONTENTIONS OF THE PARTIES

The appellant urges us to reverse the trial court because of what he maintains is an erroneous and "cryptic analysis" by the trial court of Sections 51 and 15 of the Kentucky Constitution. In essence, appellant argues that the titles to the two acts in question do not pass Section 51's constitutional requirement that the content of the act be germane to the title thereof. The Attorney General also urges us to declare as error the ruling that the procedural requirement of Section 51 does not apply to a "suspension" of existing statutes. Further, appellant argues the trial court erroneously concluded that Section 15 of the Kentucky Constitution permitted the statutory suspension and modification contained in HB 474. Finally, it is argued that the trial court erroneously applied the "germaneness" test of Section 51 to the various provisions of the acts in question.

## THE CHALLENGED STATUTES

SB 294 provides as follows:

"(1) *Nothing in a budget bill adopted by the general assembly shall be construed to effect a repeal or amendment in the Kentucky Revised Statutes*, and if any repeal or amendment appears to be effected in any of the Kentucky Revised Statutes, it shall be disregarded, shall be null and void, and the law as it existed prior to the effective date of the budget bill shall be given full force and effect.

"(2) Notwithstanding the provisions of subsection (1) of this section *the general assembly may provide in a budget bill for the suspension or modification of the operation of a statute* if the general assembly finds that the financial condition of state government requires such suspension or modification. Such suspension or modification shall not extend beyond the duration of the budget bill." (emphasis added).

It is clear from the plain language of the statute that in Section (1) the General Assembly deprives itself of the legal authority to *repeal or amend*, through the device of a budget bill, any other existing law appearing in the Kentucky Revised Statutes. However, in Section (2), the General Assembly gives itself the power to *suspend or modify the operation* of any statute, but only if the financial condition of state government so requires. The duration of such suspension is limited to the duration of the budget.

The General Assembly has, by this statute, drawn a line between its power in the budget bill to suspend or modify existing statutes, as opposed to repealing or amending existing statutes. It cannot repeal or amend, but it can suspend or modify existing statutes through the provisions of a budget bill.

Armed with this legislation, the General Assembly, in its biennial budget bill for the years 1984–1986, exercised this authority by drafting items relating to the reduction of increases in state officials' salaries, items providing for the transfer of monies from agencies and special funds to the states' general fund and items qualifying funds for resource recovery road projects, school books, and local jail support.

It is our role to determine if SB 294 may constitutionally permit the General Assembly to suspend or modify the operation of existing statutes; if the answer is in the affirmative, to further determine if both SB 294 and the budget bill comply with the requirements of the title section of Kentucky Constitution Section 51. If the answer to the second inquiry is in the affirmative we must, finally, examine each contested "modification or suspension" contained in the budget bill to determine if such actually constitutes a repeal or amendment, or if each is only a modification or suspension within the purview of SB 294(2) and of the re-enactment and pub-

investigating and reporting on community and private corporate availability of correctional services; Department of Social Services, only insofar as it exempts certain personnel from

salary ceilings and imposes a limit on administrative costs; Transportation Cabinet, only insofar as it places a ceiling on the number of full time positions in the Transportation Cabinet.

lication section of Kentucky Constitution Section 51.

## DOES THE GENERAL ASSEMBLY HAVE THE POWER IN THE BUDGET BILL TO SUSPEND OR MODIFY EXISTING STATUTORY LAW?

■ As stated, SB 294, while denying the power of the General Assembly to repeal or amend existing statutory law through the device of a budget bill, did indeed authorize that legislative body to "provide in a budget bill for the suspension or modification of the operation of a statute." No matter how one slices it, the General Assembly is permitted through the reduction or elimination of an appropriation, to effectively eliminate the efficacy of existing statutes, subject only to the finding of a financial emergency and further subject to the time limitation of the budgetary period.

We believe that this statutory scheme is clearly within the constitutional powers of the General Assembly.

It is clear that the power of the dollar—the raising and expenditure of the money necessary to operate state government—is one which is within the authority of the legislative branch of government. The Constitution of the Commonwealth so states and we have so stated. Kentucky Constitution Section 230, is as follows:

"No money shall be drawn from the State Treasury, except in pursuance of appropriations made by law."

The purpose of this section is to prevent the expenditure of the state's money without the consent of the General Assembly. *Ferguson v. Oates*, Ky., 314 S.W.2d 518 (1958). As we said in *Legislative Research Commission v. Brown*, Ky., 664 S.W.2d 907 (1984),

"The budget, which provides the revenue for the Commonwealth and which determines how that revenue shall be spent, is fundamentally a legislative matter.... Ky. Const. Sec. 49–50 empowers the General Assembly to contract debts; and Ky. Const. Sec. 53 empowers the General Assembly to provide for investigations into

the accounts of the Treasurer and Auditor of Public Accounts.

... *In a word, the final action on the enactment or adoption of the budget is a legislative matter.* It is, of course, the duty of the Governor ... to carry out and to implement the budget which is passed by the General Assembly. Ky. Const. Sec. 81." *Id.* at 925. (emphasis added).

In *Brown*, we approved a legislatively mandated budget reduction plan applicable to all three branches of state government, the operation of which was triggered when a state revenue shortfall occurred.

Also in *Brown* we declared invalid a statutory provision that required the budget be submitted as a resolution, as opposed to the mandate of Kentucky Constitution Section 88 that it be presented as a bill. Significant to the issue in the case *sub judice*, we declared

"When the budget is enacted as a *bill*, the provisions thereof could *repeal existing statutes. But if the budget document is introduced in the form of a resolution, it can not have the effect of repealing any existing statutes.*" *Id.* at p. 927. (emphasis added).

We thus *twice* stated that a budget bill could be used to *repeal* existing statutes.

Our statement there should not come as any surprise when one considers our previous decisions. In *Mattingly v. Kirtley*, 285 Ky. 795, 149 S.W.2d 521 (1941), a statute enacted in 1920 established a State Board of Athletic Control and authorized a $5,000.00 appropriation for the Board's operating expenses. That amount was not changed by a repeal of or an amendment to the statute. In the 1940 Budget Act, the appropriation to the Board was increased to $6,500.00. A suit was then filed seeking a determination of which amount was proper. The Court of Appeals gave effect to the "last word" of the General Assembly as expressed by the 1940 increased appropriation and permitted an amendment of the 1920 bill by the 1940 Budget Act. *id.* at 523. *Mattingly* stands for the proposi-

tion that—*at the very least*—the General Assembly may appropriate funds in a Budget bill in amounts that are different from those in previously enacted statutes. Interestingly enough, in that case the court did not attach any conditions such as emergency, etc., to the amendment permitted. In *Commonwealth ex rel. Meredith, Attorney General v. Johnson,* 292 Ky. 288, 166 S.W.2d 409, 414 (1942) the questioned budget bill permitted the Governor the "widest discretion" to expend and to transfer money from one fund to another, upon the finding by him that an emergency existed for which public money should be spent. The court said:

> "To hold that the state government could not take the precaution of anticipating such miscellaneous items [as an emergency] would be to retard the progress and operation of public affairs." *Id.*

In *Johnson,* the court declared that a budget bill could allow not only the transfer of funds from special accounts but also that selfsame bill would properly authorize the unappropriated and unbudgeted expenditure of funds, if an emergency (or other miscellaneous items) were found.

If it is proper for the General Assembly to delegate to the Governor the power, in a budget bill, to transfer funds and to spend them for unbudgeted items, why is it not, *a fortiori,* proper for the General Assembly, in the limited circumstances of an emergency financial situation of state government, to transfer funds and to suspend and modify the operation of a statute? We think the question answers itself.

The United States Supreme Court agrees. In *United States v. Will,* 449 U.S. 200, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980), our highest court specifically held that the United States Congress could modify statutory law in an appropriation bill. In an unanimous opinion, the Court quoting *United States v. Dickerson,* 310 U.S. 554, 555, 60 S.Ct. 1034, 1035, 84 L.Ed. 1356 (1940) said:

> "[W]hen Congress desires to suspend or repeal a statute in force, '[t]here can be no doubt that ... it could accomplish its

purpose by an amendment to an appropriation bill ...'" *Id.* at 222, 101 S.Ct. at 484.

At this point, it is necessary to remember that the questioned statute SB 294—by its own terms—denied the General Assembly the power to repeal or amend an existing law. It permitted only *suspension or modification.*

It may well be argued, that if the General Assembly has the constitutional power to *repeal or amend* existing statutes in a budget bill, it should have the power to *suspend or modify* such statutes in that selfsame budget bill. This conclusion is supported by logic, and it is also supported by law.

Kentucky Constitution Section 15, is as follows:

> "*Laws to be suspended only by General Assembly.* No power to suspend laws shall be exercised unless by the General Assembly or its authority."

There have been a minimal number of cases interpreting this section. In *Lovelace v. Commonwealth,* 285 Ky. 326, 147 S.W.2d 1029 (1941), a statute authorizing a court to probate the sentence of a person convicted of a crime was held to be a constitutionally valid "suspension" of the criminal statute. We said:

> "The legislature makes the laws that declare what are criminal offenses and define the processes by which these laws are enforced. Having the power to make, it has the power to modify and provide for abatement or suspension. *Id.* at 1034.

> "[T]the power in the legislature to authorize the courts to suspend those laws *is in the logically implied affirmation contained in Section 15 of the Constitution of Kentucky....*" *Id.* (emphasis added).

It is beyond cavil that the General Assembly can suspend the operation of statutes. Moreover, under *Lovelace,* the General Assembly delegated that authority to the Courts. See also, *Gering v. Brown*

*Hotel Corporation,* Ky., 396 S.W.2d 332 (1965).

Because of the General Assembly's exclusive authority with respect to public funds and the budget, we have no problem in deciding that Ky. Const. Sec. 15 applies to statutes which can be affected by the budget bill of the Commonwealth. The General Assembly is mandated to operate the financial offices of the Commonwealth under a balanced budget. If revenues become inadequate, the General Assembly must be empowered to use adequate devices to balance the budget. Provisions in the budget document which effectively suspend and modify existing statutes which carry financial implication certainly are consistent with those duties and responsibilities.

We have reiterated the proposition that the General Assembly may constitutionally repeal or amend existing statutes by the terms of a budget bill, so long as said bill complies with Ky. Const. Sec. 51. We have emphasized the obvious, *viz,* that the General Assembly may also *suspend or modify* existing statutes in a budget bill. Since, under paragraph (1) of SB 294, the General Assembly *denied itself* the power to *repeal* or *amend* and further said in paragraph (2) thereof it granted (or recognized) in itself the power to suspend or modify existing statutes, we must, perforce, examine the questioned provisions of the budget bill and determine whether they are only suspensions or modifications, and therefore, proper under the General Assembly's self-imposed limitation. Prior to that, however, we must address appellant's argument that both challenged acts violate Section 51 of the Kentucky Constitution.

### DO THE TITLES OF SB 294 AND HB 474 COMPORT WITH THE MANDATE OF KENTUCKY CONSTITUTION, SECTION 51?

Kentucky Constitution Section 51 is as follows:

"No law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title, and no law shall be revised, amended, or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revised, amended, extended or conferred, shall be re-enacted and published at length".

There are two proscriptions contained in this oft-litigated section. One directs that an act of the General Assembly shall only relate to one subject and requires that the subject shall be expressed in the title of the act. The other directs that no existing law shall be revised, amended, or its provisions conferred or extended by referring to its title only, but rather when such action is intended, the law is required to be re-enacted at length. Appellant attacks HB 474 and SB 294 with respect to the first proscription of Section 51 and HB 474 with respect to the second.

### (A) DO THE TITLES TO SB 294 AND HB 474 PROPERLY DESCRIBE THE SUBJECT OF THOSE ACTS.

Ky. Const. Sec. 51 has always been liberally construed, with all doubts being resolved in favor of the validity of the legislative action. The purpose of the section is said to be to prevent the enactment of "surreptitious" legislation. *Bowman v. Hamlett,* 159 Ky. 184, 166 S.W. 1008 (1914); *Dawson v. Commonwealth, Department of Transportation,* Ky., 622 S.W.2d 212 (1981). The framers of the Constitution intended to prevent surprise and fraud upon the members of the General Assembly and other interested parties, thus preventing the practice of "log rolling". *Commonwealth ex rel. Meredith v. Johnson,* 292 Ky. 288, 166 S.W.2d 409, 411 (1942).

The title need only furnish general notification of the general subject in the act. If the title furnishes a "clue" to the act's contents, it passes constitutional muster. *Talbott v. Laffoon,* 257 Ky. 773, 79 S.W.2d 244 (1935).

"Section 51 of our Constitution ... was to prevent the evil that had grown up of legislating in one act upon as many dis-

tinct and wholly disconnected subjects as the legislative body saw fit, without any indication in the title of the act as to what its contents might be.... [Prior to its adoption] [i]t was then competent for the Legislature to legislate upon a multiplicity of unrelated subjects which were neither remotely germane to, or in any wise connected with, the one or ones named in the title ... *[t]o circumvent such deceptive practices resulting in deceitful, selfish, and other baleful consequences, the provision was inserted in the Constitution." Id.* at 246 (emphasis added).

■ Do the challenged titles provide the reader a clue as to the contents of the act? Do the acts perpetrate a fraud? Did the General Assembly in providing a title to the acts and placing it in juxtaposition with the content of the acts effect something deceitful, selfish or baleful? We think not.

The challenged SB 294 title is as follows: "AN ACT relating to the relationship of the budget bill to the Kentucky Revised Statutes, and declaring an emergency."

The challenged two paragraphs of SB 294 limit the General Assembly's right to *repeal or amend* in a budget bill but permit the *suspension or modification* of such existing statutes, but only in the event that the financial conditions of the state mandate emergency action. The substance of the act thus permits suspension or modification of Kentucky Revised Statutes by a budget bill. The act expresses the relationship of a budget bill to all existing statutory law—which is primarily what the title says it does. The "germaneness" argument here is little short of specious.

■ The title of HB 474, the biennial budget bill, is as follows:

"AN ACT relating to appropriations for the operation, maintenance, support, and functioning of the government of the Commonwealth of Kentucky and its various officers, cabinets, departments, boards, commissions, institutions, subdivisions, agencies, and other state supported activities."

The various contested provisions of HB 474, provide for the transfer of funds from various trust and agency accounts to the general fund of the Commonwealth, and also provide for the reduction of raises made in various officers' salaries. The title to the act refers to "appropriation" for the operation, etc., of state government. Certainly, the title does not tell the reader that—in the voluminous act—the General Assembly has authorized the reduction of salary increases and the transfer of trust and agency funds. However, under the case law cited above all that is necessary is that the act give a "clue" as to its content and that the act be not deceitful, selfish or result in "baleful" consequences.

HB 474 is a budget—a biennial budget—directing the expenditure of literally billions of dollars to be used in the operation of state government. The provisions thereof that suspend or modify the expenditure of monies in the event of a financial problem are clearly appropriations, in the broad sense. Appropriation of the people's money is the exclusive responsibility of the General Assembly, including the power to suspend or modify such appropriation under emergency financial circumstances. Moreover, such modification or suspension is obviously part of the whole framework of the budget, and no one could possibly be deceived by the inclusion of such provisions. The fact that the title tells the reader that the act is an appropriation for the funding of state government clearly alerts one to the fact that the act deals with "appropriations" including possible changes. No person could claim to have been misled by the title of HB 474 because the content of the act sets a course of action when the financial condition of the Commonwealth deteriorates. We believe that the title of HB 474 clearly complies with Ky. Const. Sec. 51.

**(B) DO THE CHALLENGED PORTIONS OF HB 474 COMPORT WITH THE PROVISION OF KENTUCKY CONSTITUTION, SECTION 51 THAT REQUIRES AMENDMENT OF STATUTES TO BE DONE AT LENGTH?**

■ This second part of Section 51 is not nearly so often litigated as the so-called

"title" section. The purpose of this section is perhaps best explained by one of the framers:

> "The members of the General Assembly did not know what they were voting for half the time, and this section ... provides when an act is amended ... shall be set out in full, so every man will understand what it is when voting on it, and the people will know what change has been made when they see it." *Spalding, Chairman of the Legislative Committee, Volume 3, p. 3792, Debates of the Constitutional Convention.*

As the court said, in *Board of Penitentiary Commissioners v. Spencer*, 159 Ky. 255, 166 S.W. 1017 (1914).

> "When any person, lawyer or layman, takes up an act of the Legislature, to read and understand what changes have been made in an old law, he ought to have before him in the act that he is reading the whole of the law as it appears when amended or revised by the new act..." *Id.* at 1024

This part of Section 51 may be described as the re-enactment and publication requirement of that section. As stated, its application is limited by its own wording to amendment, revision, extension or conferring of existing statutes. Its purpose is to prevent deceitful practices and to provide full and easily accessible information to legislators and to the public when the General Assembly is so effecting existing law.

If a challenged statutory enactment falls within the proscribed activities, as opposed to merely being suspensory in nature, it is violative of this second part of Section 51. If it is, however, merely a suspension or modification, it is not violative thereof. The same restriction appears in SB 294(2), wherein the General Assembly restricted itself to the same limitation of Ky. Const. Sec. 51.

We now proceed to examine the challenged statutory provisions that are before us on this appeal to determine if they repeal or amend existing statutes or if they merely suspend or modify existing statutes and are therefore valid.

## DO THE CHALLENGED STATUTES CONSTITUTE A REPEAL OR AMENDMENT TO EXISTING STATUTES SO AS TO BE VIOLATIVE OF SECTION 1 OF SB 294?

### 1. STATE OFFICERS' SALARIES

HB 474, the budget document, in Part VII thereof provides in essence that if the financial condition of the state deteriorates certain salary increases of specific state officers were to be reduced.[8] The bill then provided for annual increases which are less than are provided for in the particular cited statutes. Such reduction is temporary only, expiring at the end of the biennium. The trial court upheld this action saying that the General Assembly "... has the authority to suspend previously authorized salaries in a budget bill, a subject clearly germane to appropriations." We agree.

In *Mattingly*, we upheld a budget appropriation that "repealed" prior statutory authorization for the Athletic Board of Control. See also, *State ex rel. McLeod v. Mills*, 256 S.C. 21, 180 S.E.2d 638 (1971). As we view this statute, the General Assembly has—as a premise for its action—cited the shaky financial condition of the Commonwealth. It has exercised its discretion—nay, it has performed its constitutional obligation—that of operating the Commonwealth within a balanced budget, by reducing expenditures in areas which it felt were proper. It has exercised proper legislative discretion and judgment. It has not repealed or amended the existing salary statutes, it has simply temporarily sus-

---

**8.** They are as follows: KRS 15.755 (Commonwealth Attorneys); KRS 15.765 (County Attorneys); KRS 18A.355 (State Employees); KRS 64.055 (Circuit Clerks); KRS 64.480 (Elective Statewide Officers—Governor, Lieutenant Governor, Attorney General, Superintendent of Public Instruction, Commissioner of Agriculture, Secretary of State, Auditor of Public Accounts, Clerk of Supreme Court); and KRS 64.485 (Justices and Judges of the Court of Justice).

pended them, as it clearly has the power to do. *LRC v. Brown, supra.* SB 294(2).

## 2. TRUST AND AGENCY FUND TRANSFERS

■ Under a traditional statutory scheme, the General Assembly has created what are called "trust and agency funds." Basically, when any affected agency, board, commission, or other entity of state government receives fees, rental, sales, bond proceeds, gifts, or other income, those monies are specifically appropriated by the General Assembly to those units of government. *Budget, Part II, Trust and Agency Funds;* KRS 45.253.

In the present budget bill, and based on the same premise of the financial condition of the state, the General Assembly provided for the "suspension" of enumerated statutes to "provide for the transfer of certain agency and special funds to the general fund." *Budget Memorandum, at i.*[9] Not only does the budget document provide for the transfers, but they are also authorized by statute. KRS 48.315.[10]

In each of the challenged transfers of funds, the enabling act created a reduction in the funds available to the affected agency. The trial court upheld the validity of these transfers, declaring that the General Assembly has the authority under Section 15 of the Kentucky Constitution and under KRS 48.315 "to suspend, for the duration of the biennium, sections of the Kentucky Revised Statute that pertain to trust and agency funds." We agree in part.

We repeat ourselves when we say that the General Assembly has, constitutionally speaking, the power in a budget bill to *repeal* or *amend* the manner in which public funds are used. Ky. Const. Sec. 51, the "title" section, has not been violated by the matters clearly relating to appropriations. What we decide is simply that the transfers of funds which are merely temporary, determinable suspensions of the operation of the statutes relating to appropriations of public funds are within the legislative authority as set out in SB 294 and Ky. Const. Sec. 51, the amendment section.

However, the transfers of funds which relate to appropriations of private contributions cannot be termed suspensions or modifications of the operation of the statutes. Because the General Assembly has no authority to transfer private funds to the general fund, the transfer of money from agencies in which public funds and private employee contributions are commingled, and cannot be differentiated, is unconstitutional. Diversions from the Kentucky Em-

---

**9.** In the interest of brevity, we will not discuss these at length. Suffice it to say that the Attorney General complains of the following items— Kentucky Development Finance Authority, required lapsing of $100,000 each fiscal year to the General Fund; University of Kentucky, transfer of $500,000 from the Tobacco Research Trust Fund to the General Fund; Department of Banking and Securities, transfer of $3,000,000 to the General Fund; Fish and Wildlife Resources, lapsing $1,128,000 in 1984–1985 and $1,150,000 in 1985–86; and a general transfer of various amounts to the General Fund. See Budget Document, Item 19, 35, 49, 63. For anyone who desires to read the 47 specific authorized transfers, see Budget Bill, Item VIII.

**10.** KRS 48.315 is as follows: "(1) The general assembly may provide in a budget bill for the transfer to the general fund for the purpose of the general fund all or part of the agency funds, special funds, or other funds established under the provisions of KRS 15.430; 16.565; 21.347; 21.540; 21.560; 42.500; 47.010; 48.010(g); 56.-100; 61.470; 61.580; 64.345; 64.350; 161.420; 161.430; 164A.110; 164A.020; 164A.800; 164A.810; 216A.110; 230.218; 230.398; 230.400; 230.770; 235.330; 248.540; 248.550; 278.130; 278.150; 287.485; 304.35–030; 311.450; 311.-610; 312.019; 313.350; 314.161; 315.195; 316.-210; 317.530; 317A.080; 319.131; 320.360; 321.-320; 322.290; 322.330; 322.420; 323.080; 323.-190; 323.210; 323A.060; 323A.190; 323A.210; 324.286: 324.410; 325.250; 326.120; 327.080; 330.050; 344.160; 334A.120; 335.140; 342.122; 342.480, etc.

(2) The transfer of moneys from the agency funds, special funds, or other funds to the general fund provided for in subsection (1) of this section shall be for the period of time specified in the budget bill.

(3) Any provisions of any statute in conflict with the provisions of subsections (1) and (2) of this section are hereby suspended or modified. Such suspension or modification shall not extend beyond the duration of the budget bill. (Enact. Acts 1984, ch. 410 § 6, effective July 13, 1984.)"

ployees Retirement System, County Employees Retirement System, State Police Retirement System, and Teachers' Retirement System fall within this category, as do Workers' Compensation and Workers' Claims Special Fund. The employee contributions and the insurance company assessments constitute private, mandatory donations.[11] To the extent that private funds were transferred, we reverse.

### 3. TRANSPORTATION PROVISIONS

■ The budget bill directs that the Secretary of the Transportation Cabinet shall use road fund resources to meet lease rental payments to the Kentucky Turnpike Authority. It further provides that in the event such resources are insufficient to meet payments, the shortage shall be met by transferring coal severance tax receipts to "cover the obligation". *Budget Document, Part IV,* Road Fund, Item I.

The bill also provides that the capital construction and equipment purchase contingency fund may be used to advance funds to projects authorized to be financed by bonds and may further be used to finance feasibility studies for future projects. *Budget, Part V. Capital Construction, L., Transporation.*

The Attorney General argues that the first provision is in conflict with KRS 143.-090 and that the second provision is in conflict with KRS 45.770. The trial court disagreed and found no inconsistency between the provisions and existing statutory law. We agree with the result, but not the reasoning, of the trial court.

It is clear that the first provision which divests, albeit temporarily and for the same reason as all of the challenged provisions of the budget bill, funds from the purpose set out in KRS 143.090 [12] does *conflict* with

that statute. As we have said, previously, the "conflict" is authorized by SB 294.

The same reasoning applies to the second contested provision in this section. In addition, this action of the General Assembly was authorized by a 1984 statute. KRS 45.760(12) is as follows:

"(12) The general assembly may provide in a budget bill for the capital construction and equipment purchase contingency fund to be used to advance funds to projects authorized to be financed by bonds, and to finance feasibility studies for projects which may be contemplated for future funding."

*The General Assembly thereby specifically authorized by another statute, the action which it took in the budget document.* We find no inconsistency, even if such were relevant to our decision.

### 4. FUNDING FOR TEXTBOOKS

■ The General Assembly, also through the budget bill, permitted local school districts to rent textbooks and further imposed a minimum six year period on the use of textbooks selected by the Textbook Commission. *Budget, Part I, General Fund, D. Education and Humanities, Item 29(c), (b).* It is argued that this section of the budget conflicted with KRS 156.400 and KRS 156.435(4). The trial court disagreed. We agree with the trial court.

In this section of the budget bill—as in all the questioned sections—the General Assembly was basing its action on the financial condition of the state and its various entities. It was acting on the authority granted in SB 294. In this instance, local boards of education can now—at their option—rent textbooks to students. All books shall now be used for six years. Both of these objects are economy moves. They allow local school boards to make

---

11. Following are the agencies and special funds which have private contributions:
Kentucky Employees Retirement System (KRS 61.580), County Employees Retirement System (KRS 78.650), State Police Retirement System (KRS 16.565), Teachers' Retirement System (KRS 161.420), Workers' Compensa-

tion (KRS 342.480), and Workers' Claims Special Fund (KRS 342.122).

12. KRS 143.090 provides a scheme for the expenditure of Road Fund Resources. It does not authorize the use of such funds for the payment of rent to the Kentucky Turnpike Authority.

appropriate individual decisions as to whether textbooks shall be *loaned or rented* to students. Whether one agrees with this infringement on the traditional use of "free" textbooks, one cannot challenge the General Assembly's right to make such a policy decision. The same logic applies to extending the use of books for a period of six years.[13]

We believe therefore that not only is the action of the General Assembly in the budget bill valid as a suspension or modification of existing statutes, we also believe that, there is, in effect, no real conflict.

### 5. FUNDS FOR MEDICAL CONTRACTS

The budget bill provided $900,000 fund for medical service contracts for county jails. It also provided a condition, that that fund be maintained in an individual account specifically for medical contracts, and furthermore that a county must be "certified" before it received its share of the funding. In order to be so certified, the county must attest that it has investigated and obtained the "most feasible medical contract or contracts possible." The contract(s) is subject to approval by the Corrections Cabinet. *Budget, Part I, General Fund, C. Corrections, Item 27d. Local Jail Support.*

It is claimed by appellant that such provision is in conflict with KRS 441.045.[14] It is argued that the budget bill contains "substantive law" and that such a requirement is not an appropriation. The trial court disagreed and so do we.

It is an altogether too familiar litany that the premise of this provision is to react to the financial crunch of the state and that such directive is only temporary. It is also too familiar to say that this attempt of the General Assembly to regulate even temporarily, the procurement by medical services

contracts—in an economical manner—is clearly a subject of an appropriation. The General Assembly is saying to counties, in effect, "we will give you $900,000 in aid but you don't qualify unless the contract you obtain is the most economical and feasible one." It cannot be seriously argued that this is not appropriation and therefore germane.

There is no need to "wrap up" this opinion with a lengthy summary. The General Assembly has the basic constitutional power and responsibility to tax and to spend the public's money. This power, as we have seen in prior decisions, is exclusive to the General Assembly and includes the power to use a budget bill to repeal, amend, modify and suspend existing statutes. Such power must be exercised within all constitutional proscriptions, including those of Section 51. The General Assembly, in the questioned statute hereinbefore described and relying on its own specific statutory authority, did precisely that.

The judgment of the trial court is affirmed.

STEPHENS, C.J., and GANT, LEIBSON, STEPHENSON, WHITE and WINTERSHEIMER, JJ., concur.

VANCE, J., dissents, and files a dissenting opinion.

VANCE, Justice, dissenting.

Section 51 of the Kentucky Constitution provides:

"No law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title, and no law shall be revised, amended, or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revised, amended, extended or conferred, shall be re-enacted and published at length."

---

**13.** Although the statutes permits the Superintendent of Instruction to authorize the use of textbooks for more or less than six years (KRS 156.400), the statute specifically allows the General Assembly to make its own period *in a budget bill.* KRS 156.440.

**14.** KRS 441.045 sets out the procedure as to how counties are to obtain money from the state for medical contracts. Nothing appears therein about the certification procedure.

This section contains two important restrictions that relate to the transaction of the business of the General Assembly in an orderly and intelligent fashion. The provisions relating to title and the provisions relating to republication in full of amended statutes preserve the significant purpose of preventing confusion in the minds of legislators as to the effect of proposed legislation.

Our court, some time ago, expressed the purpose of this amendment. In *Talbott v. Laffoon*, 257 Ky. 773, 79 S.W.2d 244 (1935), we said:

"Section 51 of our Constitution, and like provisions in Constitutions of other states, is of comparatively modern origin, and the purpose of the people in incorporating it as a part of their fundamental law was to prevent the evil that had grown up of legislating in one act upon as many distinct and wholly disconnected subjects as the legislative body saw fit, without any indication in the title of the act as to what its contents might be. Prior to the adoption of such a provision, the title to an act might clearly indicate that it related to a specifically named subject, or to a number of named subjects, with the body of it containing provisions for a wholly distinct and unconnected subject or subjects than what was mentioned in the title. It was then competent for the Legislature to legislate upon a multiplicity of unrelated subjects which were neither remotely germane to, or in any wise connected with, the one or ones named in the title, and which, as we are advised, is yet true with reference to congressional legislation. To circumvent such deceptive practices resulting in deceitful, selfish, and other baleful consequences, the provision was inserted in the Constitution requiring, inter alia, that no statute 'shall relate to more than one subject, and that shall be expressed in the title.' "

*Id.* at 246.

In *Board of Education v. Mescher*, 310 Ky. 453, 220 S.W.2d 1016 (1949), we said:

" 'The purpose of the provision have been stated many times. Among them is the important purpose to prevent surprise or fraud, and the enactment of vicious legislation under an innocent and misleading title. Therefore, the title must give fair and reasonable notice of the nature and provisions of the Act so that a member of the legislature or any other interested person reading the title may obtain a general notice or knowledge of the contents of the Act or what it proposes to do. The title must be a true although not a detailed index of the contents. · If it is restrictive, then the Act must not exceed the specification or include what is not reasonably and properly connected with or germane to it.' "

*Id.* at 220 S.W.2d 1019.

In *Board of Penitentiary Com'rs v. Spencer*, 159 Ky. 255, 166 S.W. 1016 (1914), this court considered the requirements of Section 51 of the constitution and its purposes as it regards the republication of amended statutes. After discussing some of the practices attempted before the adoption of Section 51 of the present constitution, we said:

"It can readily be seen that, under this practice, no person, by reading an act the provisions of which had been extended or conferred in the manner indicated, could obtain any idea of the meaning or effect of it, without reading it in connection with the old law the provisions of which had been carried into the new law, by reference to the title of the old law; nor could any person, by reading an old law that had been revised or amended, by adding to it certain words or taking from it certain words, understand the meaning and effect of the old law without reading it in connection with the new one that amended or revised it in this manner. And it was largely to prevent this deceptive and misleading manner of legislating, which afforded so many opportunities for fraud, as well as to make the laws more convenient and accessible, that this section was adopted. As aptly said on this subject by Mr. Spalding, the chairman of the legislative committee, in

volume 3, p. 3792, of the Debates of the Constitutional Convention: 'The members of the General Assembly did not know what they were voting for half the time, and this section in the report provides when an act is amended it shall not be amended in that way, but that the act, as amended, shall be set out in full, so every man will understand what it is when voting on it, and the people will know what change has been made when they see it.'

"This was the whole purpose of this provision in the Constitution, and that it is a wise provision is not open to doubt. When any person, lawyer or layman, takes up an act of the Legislature, to read and understand what changes have been made in an old law, he ought to have before him in the act that he is reading the whole of the law as it appears when amended or revised by the new act, and so the convenient and the proper way to revise or amend an old law, by either adding to it or taking from it, or extending its provisions, is to set forth in the new act the law as it will read when revised, amended, or extended."

*Id.* at 166 S.W. 1023–1024.

In *Board of Penitentiary Com'rs v. Spencer, supra,* the court also established guidelines concerning the republication of amended statutes as follows:

"(a) That it is not necessary, when the body of the new act repeals, or has the effect of repealing, all or part of an existing act, to republish or set forth the parts repealed, although the title of the repealing act may purport to be an amendment to the existing act.

"(b) That when it is proposed to revise or amend one or more sections of the Kentucky Statutes, or an act, the body of the new act should contain the section or sections as they will read when revised or amended, if it is proposed to re-enact or leave in force any part of the section or sections that are amended or revised. If, however, it is intended to repeal one or more sections, then it is not necessary to set forth in the body of the act the section or sections repealed.

"(c) That when the act does not purport to be an amendment to an existing law, but a new act, it is not necessary to set out or republish any part of any old law that may be changed or repealed by the new law.

"(d) When the new act purports to amend an existing act by extending, revising, or amending it, and no particular section or part of it is specified, then the body of the new act must set forth the whole of the existing act as it will appear when extended, revised, or amended; but, if only a section or several sections of an act are extended, revised, or amended, it is only necessary to specify and republish the section or sections that are extended, revised, or amended.

"(e) That, when it is desired to confer or carry into a new law provisions of an old law, then so much of the old law as is thus conferred or carried into the new law must be published at length."

*Id.* at 166 S.W. at 1022–1023.

It seems to me that the purposes which impelled the framers of the constitution to place the limitations imposed upon the General Assembly by Section 51 of the constitution were inherently sound and ought not to be eroded to the vanishing point by judicial interpretation.

Let us examine the legislation in question. Senate Bill 294 is entitled "AN ACT relating to the relationship of the budget bill to the Kentucky Revised Statutes, and declaring an emergency." This innocuous title would scarcely inform an unsuspecting legislator that it is really an act providing for the amendment, repeal, suspension, or modification of existing statutes through various provisions to be included in a separate budget bill. In my view, the title of the bill is misleading.

Even worse is the test. Section 6 of Senate Bill 294 provides:

SECTION 6. A NEW SECTION OF
KRS CHAPTER 48 IS CREATED
TO READ AS FOLLOWS:

"(1) The general assembly may provide in a budget bill for the transfer to

the general fund for the purpose of the general fund all or part of the agency funds, special funds, or other funds established under the provisions of KRS 15.430; 16.565; 21.347; 21.540; 21.560; 42.500; 47.010; 48.010(g); 56.100; 61.470; 61.580; 64.345; 64.350; 64.355; 78.650; 95A.220; 136.392; 138.510; 150.150; 154.150; 161.420; 161.430; 164A.110; 164A.020; 164A.800; 164A.810; 216A.110; 230.218; 230.398; 230.400; 230.770; 235.330; 248.540; 248.550; 278.130; 278.150; 287.485; 304.35–030; 311.450; 311.610; 312.019; 313.350; 314.161; 315.195; 316.210; 317.530; 317A.080; 319.131; 320.360; 321.320; 322.290; 322.330; 322.420; 323.080; 323.190; 323.210; 323A.060; 323A.190; 323A.210; 324.286; 324.410; 325.250; 326.120; 327.080; 330.050; 344.160; 334A.120; 335.140; 342.122; 342.480, etc.

"(2) The transfer of monies from the agency funds, special funds, or other funds to the general fund provided for in subsection (1) of this section shall be for the period of time specified in the budget bill.

"(3) Any provisions of any statute in conflict with the provisions of subsections (1) and (2) of this section are hereby suspended or modified. Such suspension or modification shall not extend beyond the duration of the budget bill."

Section 7 of Senate Bill 294 provides:

SECTION 7. A NEW SECTION OF KRS CHAPTER 48 IS CREATED TO READ AS FOLLOWS:

"To the extent that the provisions of a budget bill are in conflict with any provisions of KRS Chapters 12, 42, 56, 152, 177, or 341, the provisions of those chapters are hereby suspended or modified. Such suspension or modification shall not extend beyond the duration of the budget bill."

No member of the General Assembly could possibly have any idea by reading the language of Senate Bill 294 what agency funds were created by the 70 enumerated statutes and could not possibly know what funds were subject to transfer upon the passage of Senate Bill 294. The inclusion of "etc." at the end of the string of enumerated statute numbers would seem to make even more uncertain what transfers were to be authorized. Such uncertainty with regard to the effect of legislation is precisely the evil that Section 51 of our constitution was designed to prevent.

An entirely separate bill, House Bill 474, the budget bill, enacted into law the transfers authorized by Senate Bill 294. House Bill 474 was entitled "AN ACT relating to appropriations for the operation, maintenance, support, and functioning of the government of the Commonwealth of Kentucky and its various officers, cabinets, departments, boards, commissions, institutions, subdivisions, agencies, and other state supported activities."

With respect to the transfers of funds, it provided for a transfer from the agency and special funds to the general fund certain enumerated dollar amounts from certain enumerated agencies. In most cases, the agency from which funds were transferred was designated by an existing K.R.S. number which identified the agency and which designated the fees and monies which were appropriated to the agency by the existing statute, and the purposes and the manner in which those fees and funds were to be used.

No legislator could tell from a reading of House Bill 474 the purposes for which the transferred funds were required to be used by the existing statute. In a session limited to 60 days each biennium, in which hundreds of bills are introduced, it is not realistic to expect that an individual legislator could research each of the statutes enumerated in House Bill 474 to determine for himself the advisability of transferring funds away from that particular agency. In one instance, House Bill 474 purports to transfer $3,980,000.00 from the "Reinsurance Association" to the general fund, but no reference is made to the statute which created the association or to the purpose and manner in which its funds are to be used.

Of necessity, the individual legislators would find it impossible to determine the full import of House Bill 474 from a reading of its express language, and could not, therefore, know the full import of their action in either voting for or against the bill. It is just such uncertainties that Section 51 of our constitution was designed to prevent.

Furthermore, under only the loosest interpretation does the transfer to the general fund of funds appropriated to an agency by an existing statute have anything to do with the subject of appropriation. These transfers do not appropriate money. They rescind appropriations under existing statutes by transferring money which was previously made available to an agency by a statute which still exists on the statute books of this state. In doing so, the existing statutes, in my opinion, were amended by the budget bill and were therefore required by Section 51 of the constitution to be republished as amended.

The majority opinion states that these were not amendments, but only suspensions or modifications of the existing statutes. The General Assembly, in Senate Bill 294, divested itself of the power to repeal or amend an existing statute by a budget bill, but granted unto itself the power to suspend or modify existing statutes.

It seems to me beyond question that repeal and amendment of statutes relate to permanent actions of the General Assembly, whereas a suspension of a statute for the duration of the biennium of the budget bill is in effect a *temporary repeal*. A modification of a statute, limited to the biennium of the budget bill is a *temporary amendment*.

If an amendment is not valid unless republished as amended, it follows that a temporary amendment must also be published in full.

The transfer of various agency funds to the general fund conflicts in many instances with the express purpose and manner in which existing law requires those funds to be used, and the transfer in the budget bill does not suspend the existing statute. The existing statute is left intact, except to the extent that a portion of the funds for the use of the agency has been siphoned off for a different purpose. This does not suspend the existing statute but modifies it temporarily. Because a modification is in effect an amendment, albeit temporary, the full text of the existing law as modified is required to be published.

I do not doubt that the General Assembly has the power to control appropriations and expenditures, nor that it has the power to repeal or to amend statutes which appropriate money and provide the manner in which it shall be used.

It can, as an example, abolish the Department of Fish and Wildlife Resources Commission by repeal of the statute which created it. It has the power to direct that money derived from licenses issued by the commission be used for a different purpose than that provided by K.R.S. 150.150, but it must be done by amending K.R.S. 150.150 and republishing it in full as amended.

K.R.S. 150.150 provides:

"(1) Except as provided in this chapter, all moneys derived from the sale of licenses or from any other source connected with the administration of this chapter shall be promptly paid over to the state treasurer, who shall deposit such moneys in a special fund, known as the game and fish fund. The game and fish fund shall be used to carry out the purposes of this chapter and any law or regulation for the protection of wild animals, birds or fish, and for no other purpose.

"(2) All funds received under KRS 150.110, 150.510 and 150.520 shall be used by the department for the purpose of enforcing those sections and for the protection and propagation of mussel beds. Any surplus remaining in the fund at the close of each calendar year shall be turned into the general fund of the department. (1954d-10, 1954d-48: amend. Acts 1942, ch. 68, § 15; 1952, ch. 200, § 22; 1968, ch. 38, § 6; 1978, ch. 384, § 33, effective June 17, 1978.)"

This statute provides that the game and fish fund be used for purposes specified in the statute and *for no other purpose*. The budget bill purports to transfer $225,000.00 of the funds of the Department of Fish and Wildlife Resources Commission to the general fund with no limitation on the manner of spending. The budget bill does not repeal K.R.S. 150.150 because, except for the funds transferred, the statute will continue to be operative. The budget bill does, however, amend K.R.S. 150.150 because it takes away funds which were designated for a specific purpose and diverts them to another purpose. Because K.R.S. 150.150 was so amended, but its text was not republished or amended as required by the constitution, Section 51, a legislator would not know the effect that the budget bill would have upon the operation of the Department of Fish and Wildlife Resources Commission. The same thing is true of all other cases where the transfer of funds from commissions and agencies by the budget bill contravenes the express provisions of existing statutes.

I remain convinced that the intent and purpose of Section 51 of the constitution is sound, and that erosion of its effectiveness by judicial interpretation will in the long run lead to unfortunate consequences.

Recent events teach us the danger of circumventing the constitution. Sections 49 and 50 of our constitution prohibit the creation of public debt in excess of $500,000.00 except upon the vote of a bonded indebtedness by the people, accompanied by the enactment of a tax for the specific purpose of liquidating the principal and interest on the indebtedness. Notwithstanding this salutary economic principle, the state has issued millions of dollars of revenue bonds without a vote of the people and without enactment of a specific tax to retire the bonds. The bonds have been upheld by the courts upon the theory that they are to be retired from revenues derived from projects financed by the bonds and that such bonds do not constitute an indebtedness of the state. Many of the projects financed by these bonds produce no revenue at all apart from money taken from current state revenues. Revenue bonds are used to finance road construction projects, and the transportation department then leases the roads, and the lease payments are used to retire the principal and interest on the bonds.

Although not technically an indebtedness of the state, these bonds have created an obligation which must, as a practical matter, be satisfied out of current revenues because a default would ruin the credit of the state. The expenditure of current funds to pay for the leases necessary to retire interest and principal on revenue bonds is substantially responsible for a current critical shortage of funds available to the transportation department for other purposes.

One purpose of Sections 49 and 50 of our constitution is to prevent a current administration from obligating the tax revenues of a future administration. What has happened is that Sections 49 and 50 of the constitution have been circumvented, and as a practical matter, past administrations have been permitted to obligate the tax revenues of the present and of future administrations. We now begin to feel the consequences. I mention this as an example because it is easy to become impatient with restrictions imposed by our constitution. Section 51 serves a sound and prudent purpose, and in my view, it is important that we interpret it to prevent the very abuses it was designed to prohibit.

I would hold all of the contested sections of Senate Bill 294 and House Bill 474 unconstitutional to the extent they violate Section 51 of the Kentucky Constitution in the manner expressed in this dissent.