FISCAL COURT OF TAYLOR COUNTY; Taylor County; Samuel E. Phillips, Judge Executive; Bobby Roots; Dan Davis; Edwin Stamp; J.W. McFarland; G. Dennis Smith; W.H. Morris; and Justices of the Peace (Magistrates) Taylor County Fiscal Court, Movants,

v.

TAYLOR COUNTY METRO POLICE; Taylor County Police Merit Board; Buster Hall; James C. Lacy; Lilburn Hedgespeth; Bobby H. Harden (Chief Taylor County Metro Police); and Terry R. Brown, Respondents.

No. 89–SC–525–DG.

Supreme Court of Kentucky.

March 14, 1991.

Danny Butler, Butler, Butler & Hudson, Greensburg, for movants.

Harold K. Huddleston, Elizabethtown, for respondents.

STEPHENS, Chief Justice.

The specific issue we decide on this appeal is whether a judicial court may order a county fiscal court to appropriate "adequate" funding for the operation of a statutorily authorized county police force. We answer this question in the negative and reverse the Court of Appeals.

The respondents filed a complaint in the Taylor Circuit Court, seeking a writ of mandamus against the movants, attempting to require the fiscal court to appropriate adequate funds to operate a county police force which had been established by the County Judge Executive. Following a motion to dismiss the complaint, the trial court granted the motion, ruling that although the police force was a county agency, the police were not county employees. The Court of Appeals reversed, essentially declaring that the fiscal court had "ratified" the creation of the police force, and thus, may not "decline to provide adequate funding" for it. Upon motion properly made, we granted discretionary review.

In 1975, Taylor County and the City of Campbellsville formed a joint police force. This organization continued until 1982, at which time the city withdrew and formed its own police force. Following that action, also in 1982, the Taylor County Judge Executive formed a county police force, called the Taylor County Metro Police Force. KRS 70.540. Following that action by the Judge Executive, Taylor Fiscal Court established a county police force merit system. KRS 78.405.

All went well with the county police force until mid–1987, with the Fiscal Court providing all its necessary operating expenses. With the final adoption of its 1987–1988 budget, the Fiscal Court appropriated only $25,000 for the county police force which was inadequate for the force to operate for a full year. At the time of the hearing before the trial court, on March 4, 1988, the county police had no funds remaining with which to operate the police

force for the balance of the county fiscal year. This law suit had been filed in response to that situation.

Movants argue that the appropriation by the Fiscal Court of the $25,000 was a decision to be made solely by it, and is not subject to judicial review. The appropriation was, it is argued, consistent with the legislative decision and financial ability of Taylor County. If a judicial court were to substitute its judgment for that of the county legislative and fiscal agency, the door would be open for all county agencies to file such actions which would result in chaos and the destruction of the fiscal court's control of its purely local affairs.

Respondents posit that, under the statutory scheme in Kentucky and under the case of *Saylor v. Metcalf*, 310 Ky. 137, 220 S.W.2d 99 (1949), since the Fiscal Court has tacitly concurred with the establishment of the county police force, it is under a legal obligation to "adequately" fund it.

Before proceeding to a discussion of the critical issue on this appeal, we note that movants have previously challenged the standing of respondents to maintain this action. The Court of Appeals ruled there was standing, but movants have not raised this issue in their brief before us. We assume, from their silence, that they concur with that decision.

The authority of the Taylor County Judge Executive to, pro se, establish a county police force appears in KRS 70.540.

"The county judge/executive of the respective counties shall have and are hereby given the power, jurisdiction and authority to establish, appoint and maintain a county police force within their respective counties."

It should be noted that approval by the fiscal court is not necessary, nor is there any provision for the funding of the operation of the police force.

KRS 78.405 authorizes the fiscal courts of the several counties to create a county police merit system. The purpose of such system is to promulgate rules and regulations classifying and examining applicants for the county police force, and to deal with other typical personnel and governance matters. The only reference to money in this statute is Sec. (2) which provides that fiscal courts (which have established merit systems) "shall make appropriations of money for the reasonable and necessary expenses of *the said board*." (emphasis added). The failure to mention funds for the *operation* of the police force is consistent with the same omission in KRS 70.540. It is, in both statutes, conspicuous by its absence.

Is there then any statute which requires a fiscal court, once the county judge/executive has established a police force to appropriate any funds therefor, or once having appropriated funds, to provide adequate funds?

The general powers of fiscal courts are set out in KRS 67.080. In section one, the permissive powers are identified. No specific reference is made to police force. However, it is provided that the fiscal court may

(c) Regulate and control the fiscal affairs of the county.

No matter how far one looks, or how far one stretches the language, the only interpretation that can be made is that the fiscal affairs of the county are to be regulated and controlled by the fiscal court. Moreover, in the mandatory section of KRS 67.-080(2) no reference is made to police forces.

KRS 64.530 grants to the fiscal courts of the counties (with two inapplicable exceptions) the power to fix the compensation of every county officer or employee. The statute states that the fiscal courts shall fix such compensation. But, it does not either specifically or inferentially, require the fiscal courts to employ anyone, or to pay such employees any particular amount of money. To do so would be wholly inconsistent with KRS 67.080(1)(c), *infra*.

Respondents argue that to permit a county judge/executive to establish a police force and to permit a fiscal court to deny funding would be an "absurdity." It may well be argued that to grant a county judge/executive the sole power to create a county police force to force the fiscal court to spend money over and above the budget

would be an equal or a greater absurdity. The fact remains that the legislature has not spoken directly to the matter.

The decision to fund, to any degree, a county police force or any county agency, is, arguably, a political one. KRS 68.260 gives credence to this view. It provides for the adoption of a county budget by the fiscal court and it further provides for the dissemination of the budget by posting of the budget near the front door of the courthouse and the publication, in appropriate print media, at least 10 days before final adoption. Moreover, Section (2) provides that:

"[a]ny taxpayer or group of taxpayers may petition the fiscal court in respect to the budget or *any part thereof* before *final adoption.*" *Id.* (emphasis added).

If taxpayers of Taylor County objected to the amount of money appropriated by the fiscal court, they could have brought any objection before the fiscal court. Such a permissive statute further strengthen the view that the budget making process of a fiscal court is a political one.

Respondents rely on *Saylor, supra.* In that case, prior to November 12, 1947, the county court of Harlan County, pursuant to then existing KRS 70.540 established a two man county police force. The Harlan Fiscal Court refused to fix the compensation of the two officers pursuant to the mandate of KRS 70.560 (now repealed). Following *Metcalf v. Howard,* 304 Ky. 498, 201 S.W.2d 197 (1947), the Harlan Fiscal Court fixed the salaries of the two policemen at $75.00 per month. On August 11, 1948, the Harlan Circuit Court adjudged the salary was unreasonably low and ordered the members of the fiscal court to fix salaries that were "fair and reasonable." Upon entry of the judgment, the fiscal court raised the salaries to $85.00 per month. Upon motion for a rule for contempt against the fiscal court members, the circuit court directed the fiscal court to fix the two police officer's salaries at $2,700 per annum and $1,800 per annum. We upheld that decision.

The basis for the decision was the existence of KRS 70.560, which set maximum compensation limits for policemen hired pursuant to KRS 70.540. We said, [t]he "maximum amounts of compensation to be allowed, provided in KRS 70.560, indicate the legislature intended that the salaries should be substantial in a county the size of Harlan. The Circuit Court had authority to require appellants [Fiscal Court] to fix a reasonable figure." *Saylor, supra* 220 S.W.2d at 100. As can be seen, the now repealed KRS 70.500 specifically set maximum salaries for the police employees in a county police force. In the present statutory scheme, no such statute or policy exists. Quite the contrary, as the general power statute, KRS 67.080, leaves this matter solely up to the fiscal court.

Moreover, since the existing statutory scheme specifically reserves the fiscal authority in the hand of the fiscal court, any language to the contrary in *Saylor* is hereby overruled.

As much as we may agree with the decision to have a county police force, and or as much as we may disagree with the rendered appropriation which effectively eliminated the police force as a viable entity, we cannot substitute our judicial fiat for that of the clear legislative purpose and the traditional role of fiscal courts in setting legislative and fiscal policy. *See,* analogy, *Commonwealth ex rel. Armstrong v. Collins,* Ky., 709 S.W.2d 437 (1986) and *Legislative Research Commission v. Brown,* Ky., 664 S.W.2d 907 (1984).

The decision of the Court of Appeals is reversed.

All concur.